SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

THE DISTRICT OF COLUMBIA,
A municipal corporation,
1350 Pennsylvania Avenue, NW, Suite 409
Washington, DC 20004,

    Plaintiff,

    v.                                              Civil No. 06-0000162

STEVEN LONEY and
CAROLINE CHARLES,
1434 Somerset Place, N.W.
Suite 204
Washington, D.C. 20011

    Defendants.

## COMPLAINT IN INTERVENTION

### Introduction

1.    The Plaintiff Intervenors – nine Latino families and the Equal Rights Center – intervene in this lawsuit to vindicate their fair housing rights. Plaintiff Intervenors allege that Defendants, Steven Loney and Caroline Charles have discriminated and are continuing to discriminate in housing on the basis of national origin against Plaintiff Intervenors in violation of the Fair Housing Act and the D.C. Human Rights Act, 42 U.S.C. § 3601 et seq. and D.C. Code § 2-1401.01 et seq.

2.    Upon purchasing a predominantly Latino-occupied apartment building at 710 Jefferson Street, N.W., the Defendants began intimidating, harassing, and threatening its Latino tenants, including Plaintiff Intervenors Telma Lazo, Juan Francisco Lazo, Vicente Lazo, Carmen Carabali, Guadalupe Vasquez Rivera, Ermitania de Leon Reyes, Jose Bonilla, Ernestina Gomez,

Maria Ponce, Mariano Ponce, and Dinora Mejia (collectively, "the Latino tenants"). The Defendants tried various tactics, including discriminatory insults, immigration-related threats, flawed eviction notices, and more, to force the Latino tenants to leave the building, even declaring that they were going to get rid of all the Latino tenants in the building. For example, the Defendants falsely informed the Latino tenants that immigration officials would be conducting interviews in the building and, in several conversations, called the Latino tenants derogatory names and told them to return to their own country.

3. Confronted with the Defendants' discriminatory threats and actions, the Latino tenants of 710 Jefferson Street sought assistance from the Equal Rights Center, a not-for-profit organization dedicated to eradicating discrimination in the Washington, D.C. metropolitan area and across the country. With help and counseling from the Equal Rights Center, the Latino tenants began to learn about and exercise their fair housing rights.

4. In response, the Defendants intensified their efforts to force the Latino tenants out of their homes through threats, intimidation, harassment, and coercion. The Defendants made explicitly discriminatory statements and called or threatened to call the police repeatedly, even summoning the authorities to break up a birthday party for the eight year-old daughter of one of the Latino tenants. In explicit retaliation for the exercise of her fair housing rights, the Defendants refused to permit another Latino tenant to hold a birthday party for her young daughter.

5. Failing in their efforts to force the Latino tenants from their homes through discriminatory actions and flawed eviction proceedings, the Defendants resorted to filing a Petition for Substantial Rehabilitation with the District of Columbia Department of Consumer and Regulatory Affairs that would force the Latino tenants to vacate the building.

6.      As a result of the Defendants' discriminatory actions and retaliation, the Latino tenants of 710 Jefferson Street have suffered fear, humiliation, anger, distress, and embarrassment, affecting their health and their livelihoods.

7.      In addition, the Defendants' actions have frustrated the Equal Rights Center's mission to advance fairness and equality in housing and forced it to divert its scarce resources from other projects in order to address the effects of the Defendants' discriminatory actions and to educate and assist the Latino tenants of 710 Jefferson Street in protecting their fair housing rights.

8.      On or about November 3, 2004, the Latino tenants and the Equal Rights Center filed complaints about housing discrimination against Defendants Loney and Charles at the District of Columbia Office of Human Rights and the U.S. Department of Housing and Urban Development.

9.      On or about May 18, 2005, the D.C. Office of Human Rights issued probable cause determinations on behalf of the Latino tenants and the Equal Rights Center as to their claims of housing discrimination.

10.     The Latino tenants and the Equal Rights Center then elected to have their cases referred to the D.C. Office of Attorney General for civil enforcement, pursuant to D.C. Code § 2-1403.05.

11.     On January 12, 2006, the District of Columbia initiated the above-captioned lawsuit pursuant to D.C. Code § 2-1403.05 against the Defendants for housing discrimination against the Latino tenants of 710 Jefferson Street in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1401.01, et seq.

12. The Plaintiff Intervenors now intervene in this lawsuit seeking declaratory judgment, permanent injunctive relief, and damages for housing discrimination on the basis of national origin under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, et seq., and the District of Columbia Human Rights Act, D.C. Code § 2-1401.01, et seq., to eradicate the Defendants' continuing discrimination on the basis of national origin and to vindicate the Plaintiff Intervenors' civil rights under federal and local fair housing laws.

**Parties**

13. Plaintiff Intervenors Telma Lazo and Juan Francisco Lazo currently reside at 710 Jefferson Street, N.W., Apartment B-2, Washington, D.C., and have resided there since 2001. Mr. and Mrs. Lazo are of Latino origin.

14. Plaintiff Intervenor Vicente Lazo currently resides at 710 Jefferson Street, N.W., Apartment B-1, Washington, D.C., and has resided there since 1998. Mr. Lazo is of Latino origin.

15. Plaintiff Intervenor Carmen Carabali resided at 710 Jefferson Street, N.W., Apartment 10, Washington, D.C., from May 2004 through May 2005. Carmen Carabali is of Latino origin.

16. Plaintiff Intervenor Guadalupe Vasquez Rivera currently resides at 710 Jefferson Street, N.W., Apartment 11, Washington, D.C., and has resided there with her husband and three small children since September 2003. Ms. Vasquez Rivera is of Latino origin.

17. Plaintiff Intervenor Ermitania de Leon Reyes currently resides at 710 Jefferson Street, N.W., Apartment 12, in Washington, D.C., and has resided there since April 2004 with her husband and three small children. Prior to living in Apartment 12, she lived in Apartment 10 of the same building for approximately four years. Mrs. Reyes is of Latino origin.

18. Plaintiff Intervenor Jose Bonilla currently resides at 710 Jefferson Street, N.W., Apartment 13, Washington, D.C., and has resided there since 2000 with his wife and child. Mr. Bonilla is of Latino origin.

19. Plaintiff Intervenor Ernestina Gomez currently resides at 710 Jefferson Street, N.W., Apartment 23, Washington, D.C. Ms. Gomez has resided there since 1999 with her family. Ms. Gomez is of Latino origin.

20. Plaintiff Intervenors Maria and Mariano Ponce resided at 710 Jefferson Street, N.W., Apartment 30, Washington, D.C. from July 2003 until May 2005. Mr. and Mrs. Ponce are of Latino origin.

21. Plaintiff Intervenor Dinora E. Mejia resided at 710 Jefferson Street, N.W., Apartment 31, Washington, D.C., with her two small children from February 2004 until December 2004. Ms. Mejia is of Latino origin.

22. Plaintiff Intervenor The Equal Rights Center (ERC) is a private, not-for-profit civil rights organization dedicated to advancing the principles of fair housing, fair employment, and equal access to public accommodations in the Washington, D.C. metropolitan region and across the country. The Equal Rights Center's mission is to ensure greater compliance with federal, state, and local civil rights laws through moral persuasion, education, outreach, counseling, advocacy, testing and compliance services, research, planning, and the enforcement of civil rights laws. It engages in activities throughout the United States, including in the Washington, D.C. Metropolitan area, to promote equal availability of housing to all persons regardless of membership in a protected class, to identify barriers to fair housing, and to help counteract and eliminate discriminatory housing practices.

23. Defendant Steven Loney is co-owner and co-manager of the property at 710 Jefferson Street, N.W., Washington, DC. His duties include the day-to-day management of the property. Defendant Loney's principal place of business is 1434 Somerset Place, N.W., Suite 204, Washington, D.C. 20011.

24. Defendant Caroline Charles is co-owner and co-manager of the property at 710 Jefferson Street, N.W., Washington, D.C. Defendant Charles's principal place of business is 1434 Somerset Place, N.W., Suite 204, Washington, D.C. 20011.

**Jurisdiction and Venue**

25. This Court has jurisdiction over this action pursuant to D.C. Code § 11-921 and 42 U.S.C. § 3612.

26. This Court has personal jurisdiction over the Defendants pursuant to D.C. Code §§ 13-422 and 13-423 in that the Defendants reside and maintain their principal place of business in the District of Columbia and the claims arise from the Defendants' conduct in the District of Columbia.

**Factual Allegations**

27. Plaintiffs adopt and reallege the allegations in paragraphs 1- 23.

28. The property at 710 Jefferson Street, N.W., Washington, D.C. consists of a 14-unit apartment building and the surrounding premises. The apartment units at 710 Jefferson Street are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

29. As of June 2004, the overwhelming majority of the tenants living at 710 Jefferson Street were of Latino national origin, primarily from El Salvador.

30. The Defendants purchased 710 Jefferson Street, N.W., Washington, D.C. in June, 2004.

31. Shortly after taking ownership of the property, the Defendants began to harass, threaten, and intimidate the Latino tenants on the basis of their national origin and to engage in actions intended to force the Latino tenants to leave the building.

32. On or about June 28, 2004, within one month of purchasing the building, the Defendants distributed a written notice to all Latino tenants at 710 Jefferson Street stating that "Representatives from the IMMIGRATION & NATURALIZATION DEPARTMENT will soon be conducting interviews in the building." This notice was false.

33. On or about July 18, 2004, Defendant Loney had a conversation with one Latino tenant in which he again threatened the Latino tenants with immigration enforcement actions. That day, Plaintiff Intervenor Telma Lazo asked Defendant Loney if he would employ her to clean the building. Defendant Loney responded by stating that immigration officials were coming to take Mrs. Lazo and all of the other Latino tenants out of the building. This statement was false.

34. On another occasion, on or about August 22, 2004, Plaintiff Intervenor Telma Lazo called Defendant Charles to make a maintenance request for another tenant. During the conversation, Defendant Charles spoke to Mrs. Lazo in derogatory terms about Latinos. She said that Mrs. Lazo was a stupid Salvadoran and called all Salvadorans imbeciles. Defendant Charles further asked why the Latino tenants were in the United States instead of their own country.

35. On two occasions in September 2004, Defendant Loney made similar discriminatory statements about the Latino tenants at 710 Jefferson Street. The first time, Defendant Loney encountered Plaintiff Bonilla outside the front of the building and stated to Mr. Bonilla that he was going to get rid of all the Latinos in the building. Later in September 2004,

Defendant Loney again encountered Mr. Bonilla outside the building and said the Latino tenants at 710 Jefferson Street should go back to where they came from.

36. In another attempt to force the Latino tenants to leave the building, the Defendants filed a Petition for Substantial Rehabilitation of 710 Jefferson Street with the District of Columbia Department of Consumer and Regulatory Affairs on or about August 8, 2004. The proposed Petition would require that the Latino tenants vacate their apartments for six months.

37. On or about August 11, 2004, Defendant Loney again made clear his intention to remove the Latino tenants from the building when Plaintiff Intervenor Telma Lazo attempted to pay her rent to him. At that time, Defendant Loney stated that he wanted her out of the building.

38. In addition to making explicit discriminatory statements, the Defendants engaged in other behavior in an effort to force the Latino tenants to leave their units at 710 Jefferson Street.

39. In June 2004, shortly after taking possession of the building, the Defendants sent almost all of the Latino tenants notices titled "Notices to Correct or Vacate." These notices informed the Latino tenants that the Defendants desired to gain possession of premises occupied by the Latino tenants and proposed termination of their tenancy.

### Involvement of the Equal Rights Center

40. Beginning in July 2004, the Latino tenants living at 710 Jefferson Street reached out to community organizations for assistance in addressing the discriminatory and abusive behavior of the Defendants. The Latino tenants made contact with Plaintiff Intervenor Equal Rights Center and established a relationship with the Equal Rights Center.

41. The Equal Rights Center has engaged in extensive counseling of the Latino tenants on their fair housing rights and their options to address the Defendants' discrimination, including formal and informal meetings, since July 2004.

42. The Equal Rights Center also conducted an in-depth investigation of the alleged discrimination at 710 Jefferson Street, including interviewing witnesses, gathering relevant documents, and identifying all of the victims of the discrimination.

43. The Equal Rights Center assisted the Latino tenants in preparing, filing, and pursuing complaints against the Defendants before the District of Columbia Office of Human Rights and the U.S. Department of Housing and Urban Development. On or about November 3, 2004, the Latino tenants and the Equal Rights Center filed complaints at the District of Columbia Office of Human Rights and the U.S. Department of Housing and Urban Development against Defendants Loney and Charles. On or about May 18, 2005, the D.C. Office of Human Rights issued probable cause determinations on behalf of the Latino tenants and the Equal Rights Center as to their claims of housing discrimination. On or about July 7, 2005, the Latino tenants and the Equal Rights Center elected to have their cases referred to the D.C. Office of Attorney General for civil enforcement, pursuant to D.C. Code § 2-1403.05.

44. In order to counteract the harm caused by the Defendants, the Equal Rights Center also engaged in regular communication with other community groups to coordinate services provided to the Latino tenants at 710 Jefferson Street, to engage in an education and outreach campaign to members of the Latino community regarding their rights under civil rights laws and how to recognize and combat discriminatory actions such as those of the Defendants, and to provide extensive counseling regarding tenant and property owner rights and responsibilities under local, state, and federal civil rights law.

45. The Defendants' actions did not improve after the Latino tenants sought to exercise their fair housing rights. The Defendants made derogatory comments about the Latino tenants and their national origin, described above, after the Latino tenants first met with representatives from the Equal Rights Center in late July 2004 and began to exercise their rights.

46. After the Latino tenants established a relationship with the Equal Rights Center, the Defendants' harassment of the Latino tenants worsened through increased calls to the D.C. Police. In fact, on one occasion, the Defendants called the police when Equal Rights Center representatives came to 710 Jefferson Street to meet with the Latino tenants about their civil rights.

47. The Defendants have also intimidated and harassed the Latino tenants of 710 Jefferson Street by instituting and enforcing unreasonable tenancy rules and standards, by threatening to call the police, by repeatedly taking photographs of the Latino tenants and their children inside and outside of the building, and by threatening to evict them.

48. On or about February 9, 2005, Defendant Loney told Plaintiff Intervenor Ermitania Reyes that he was angry with the Latino tenants because they had filed complaints against him.

### Injury to Plaintiffs

49. The Defendants' actions and statements have caused the Latino tenants humiliation, fear, anger, embarrassment, and intimidation. The Defendants' threatening and demeaning statements have harmed the Latino tenants' dignity and made them fear losing their housing. The Latino tenants have also experienced extreme distress because the Defendants exposed small children to their discriminatory behavior.

50. In addition, the Defendants' actions and statements have affected the health of the Latino tenants.

51. The Latino tenants have missed many days of work to meet with community organizations and participate in the proceedings before the District of Columbia Office of Human Rights as a result of the Defendants' discrimination.

52. Plaintiff Intervenor Equal Rights Center has made and continues to make substantial efforts and to expend considerable resources to interview, counsel, research, and investigate Defendants' discriminatory actions on behalf of the Latino tenants.

53. The Defendants' actions based on national origin are also in direct interference with Plaintiff Intervenor Equal Rights Center's efforts and programs, which are intended to bring about equality of opportunity in housing for members of all locally and federally protected classes. Defendants' discriminatory actions interfere with Plaintiff Intervenor Equal Rights Center's goal of affirmatively furthering fair housing for all individuals by frustrating its mission and by forcing it to divert its scarce resources from other important activities in counteracting housing discrimination.

54. In engaging in the unlawful conduct described above, the Defendants have acted intentionally and maliciously and with callous and reckless disregard of the Plaintiff Intervenors' rights, in violation of the federal Fair Housing Act and the District of Columbia Human Rights Act.

**COUNT I**
**(Fair Housing Act, 42 U.S.C. §§ 3604 and 3617)**

55. The allegations of paragraphs 1-54 are incorporated as though fully set forth here.

56. As described above, by their actions and statements, the Defendants have sought and continue to seek to create a hostile living environment for the Latino tenants and to force the Latino tenants out of their homes, discriminating against them on the basis of their national origin, in violation of 42 U.S.C. §3604(a), (b), and (c).

57. Through their actions and statements, the Defendants have interfered with, intimidated, threatened, and retaliated against and continue to interfere with, intimidate, threaten, and retaliate against the Latino tenants for exercising their housing rights and for having aided or encouraged any other person in the exercise or enjoyment of their housing rights, in violation of 42 U.S.C. §3617.

58. Defendants' actions and statements described above have caused damage to the Latino tenants and the Equal Rights Center.

## COUNT II
### (D.C. Human Rights Act, D.C. Code §§ 2-1402.21 and 2-1402.61)

59. The allegations of paragraphs 1-58 are incorporated as though fully set forth here.

60. As described above, by their actions and statements, the Defendants have sought and continue to seek to create a hostile living environment for the Latino tenants and to force the Latino tenants out of their homes, discriminating against them on the basis of their national origin, in violation of D.C. Code § 2-1402.21.

61. Through their actions and statements, the Defendants have interfered with, intimidated, threatened, and retaliated against and continue to interfere with, intimidate, threaten, and retaliate against the Latino tenants for exercising their housing rights and for having aided or encouraged any other person in the exercise or enjoyment of their housing rights, in violation of in violation of D.C. Code § 2-1402.61.

62. Defendants' actions and statements described above have caused damage to the Latino tenants and the Equal Rights Center.

**Prayer For Relief**

63. WHEREFORE, the Plaintiff Intervenors pray that this Court enter an order:

   a. Declaring the acts, policies, and practices of the Defendants complained of herein to violate the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3604 and 3617, and the D.C. Human Rights Act, D.C. Code §§ 2- 1402.21 and 1402.61;

   b. Ordering the Defendants to eliminate any practice or policy of discriminating against persons because of their national origin or of coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of their housing rights;

   c. Ordering the Defendants, their agents, employees, successors, and those acting in concert with them to abstain permanently from re-instituting any practice or policy of discriminating against any persons on the basis of national origin or of coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of their housing rights;

   d. Ordering the Defendants to adopt a written policy stating that the Defendants comply with the Fair Housing Act and the D.C. Human Rights Act and as such welcome all people, including Latinos, and to distribute the written policy to all existing and future tenants of properties owned or managed by the Defendants;

   e. Ordering the Defendants to attend fair housing training;

f.  Awarding compensatory damages to the Latino tenants in an amount that would fully compensate them for the economic loss, humiliation, embarrassment, physical and emotional distress, and other damages suffered as a result of Defendants' unlawful and discriminatory acts, all as alleged herein;

g.  Awarding compensatory damages to Plaintiff Intervenor Equal Rights Center in an amount that would fully compensate it for diversion of resources, frustration of mission, and other damages the organization has suffered as a result of Defendants' unlawful and discriminatory acts, all as alleged herein;

h.  Awarding punitive damages to the Plaintiff Intervenors in the amount that would punish Defendants for the willful, wanton, and reckless misconduct alleged herein and that would deter Defendants and others from future discriminatory behavior;

i.  Awarding the Plaintiff Intervenors their costs and reasonable attorneys' fees in this action, pursuant to 42 U.S.C. §§ 1988 and 3613(c)(2) and D.C. Code §§ 2-1403.05(g), 2-2-1403.13(a), and 1403.16(b); and

j.  Granting such other and further relief as this Court deems just, equitable, and proper.

**Demand for Jury Trial**

64.  The Plaintiff Intervenors demand a trial by jury on all counts set forth herein.

Dated: February 17, 2006

Respectfully submitted,

/s/

Craig A. Holman (D.C. Bar No. 447852)
Cecily E. Baskir (D.C. Bar No. 485923)
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, DC 20006
(202) 955-3000 (phone)
(202) 955-5564 (facsimile)

Isabelle M. Thabault (D.C. Bar No. 318931)
Eliza Platts-Mills (D.C. Bar No. 466453)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS & URBAN AFFAIRS
Washington, D.C. 20037-1128
11 Dupont Circle, N.W., Suite 400
(202) 319-1000 (phone)
(202) 319-1010 (facsimile)

**ATTORNEYS FOR PLAINTIFF INTERVENORS**

# 2831561_v10

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing Complaint in Intervention were served by first-class mail, postage prepaid, this 17th day of February, 2006, on:

      Robert J. Spagnoletti, Attorney General
      David M. Rubinstein, Deputy Attorney General, Public Safety Division
      Brenda Walls, Chief, Civil Enforcement Section
      Joel D. Armstrong, Assistant Attorney General
      Walter Adams, Assistant Attorney General
      441 4th Street, NW, Suite 450N
      Washington, DC 20001
      Attorneys for Plaintiff District of Columbia

      Alan Balaran
      1717 Pennsylvania Ave., N.W.
      Suite 1300
      Washington, DC 20006
      Attorney for Defendants Loney and Charles

_____
Craig A. Holman