**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

THE DISTRICT OF COLUMBIA,
A municipal corporation,
1350 Pennsylvania Avenue, NW, Suite 409
Washington, DC 20004,

      Plaintiff,

      v.                                Civil No. 06-0000162

STEVEN LONEY and
CAROLINE CHARLES,
1434 Somerset Place, N.W.
Suite 204
Washington, D.C.  20011

      Defendants.

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**CONSENT MOTION FOR LEAVE TO INTERVENE AS PLAINTIFFS**

      Superior Court Rule 24(a) governs intervention of right and requires that the Court shall, upon timely application, permit anyone to intervene in an action when applicable law confers an unconditional right to intervene.   D.C. law confers an unconditional right upon Plaintiff Intervenors to intervene in this case, and their Consent Motion to Intervene as Plaintiffs is timely.

      In housing discrimination cases filed initially with the D.C. Office of Human Rights, D.C. Code § 2-1403.05(g) clearly grants an unconditional statutory right to intervene to any aggrieved party if a timely election has been made pursuant to D.C. Code § 2-1403.05(f) to refer the claims of discriminatory housing practices to the D.C. Office of Attorney General for enforcement through a civil action.  In analogous cases brought under the federal Fair Housing Act, 42 U.S.C. § 3612(o)(2) similarly provides that any aggrieved person may intervene as of

right in a civil action brought by the Attorney General to obtain relief with respect to discriminatory housing practices. *United States v. California Mobile Home Park Management Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994) (holding that aggrieved person had right to intervene under the Fair Housing Act), *holding reaffirmed in* 107 F.3d 1374, 1376 (9th Cir. 1997); *United States v. Presidio Investments, Ltd.*, 4 F.3d 805, 808 & n.1 (9th Cir. 1993) (holding that section 812(o)(2) of the Fair Housing Act confers an unconditional right to intervene upon aggrieved persons); *United States v. Country Club Garden Owners Assoc., Inc.*, 159 F.R.D. 400, 402 (E.D.N.Y. 1995) (same); *see also United States v. Marsten Apartments, Inc.*, 175 F.R.D. 265, 269 (E.D. Mich. 1997) (holding that aggrieved parties have an unconditional right to intervene in housing discrimination case brought by Attorney General under 42 U.S.C. § 3614(e)).

In this case, as set forth more fully in the Complaint in Intervention, Plaintiff Intervenors filed housing discrimination complaints against Defendants with the D.C. Office of Human Rights, which issued a finding of probable cause on or about May 18, 2005. On or about July 7, 2005, Plaintiff Intervenors timely elected to refer their claims to the D.C. Office of the Attorney General pursuant to D.C. Code § 2-1403.05(f). The District of Columbia filed a civil action on behalf of the Plaintiff Intervenors in this Court on January 12, 2006. Plaintiff Intervenors therefore meet the requirements for the statutory right to intervention set forth in D.C. Code § 2-1403.05(g).

Furthermore, Plaintiff Intervenors' motion to intervene is timely. In considering the timeliness of an application for intervention, the Court should consider (1) the length of the intervenors' delay in filing its application, (2) the reason for the delay, (3) the state to which the litigation had progressed when intervention was sought, (4) the prejudice the original parties may suffer if the application is granted, and (5) the prejudice that the intervenors may suffer if their

application is denied. *Emmco Ins. v. White Motor Corp.*, 429 A.2d 1385, 1387 (D.C. 1981) (describing the considerations for an application for permissive intervention). In this case, the factors clearly weigh in favor of granting the Consent Motion to Intervene as Plaintiffs. Only one month has passed since the Plaintiff filed its Complaint, and Defendants have not yet filed any answer or other responsive pleading. The original parties, who have consented to this motion, are not likely to suffer any cognizable prejudice if the motion is granted. Moreover, Plaintiff Intervenors seek relief on matters directly related to the matters asserted by the District of Columbia but not covered by its Complaint, as they are permitted to do under well-established law.

WHEREFORE, in light of the foregoing, Plaintiff Intervenors respectfully request that their Consent Motion to Intervene as Plaintiffs be granted.

Dated: February 16, 2006

Respectfully submitted,

Craig A. Holman (D.C. Bar No. 447852)
Cecily E. Baskir (D.C. Bar No. 485923)
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006
(202) 955-3000 (phone)
(202) 955-5564 (facsimile)

Isabelle M. Thabault (D.C. Bar No. 318931)
Eliza Platts-Mills (D.C. Bar No. 466453)
WASHINGTON LAWYERS' COMMITTEE FOR
     CIVIL RIGHTS & URBAN AFFAIRS
Washington, D.C. 20037-1128
11 Dupont Circle, N.W., Suite 400
(202) 319-1000 (phone)
(202) 319-1010 (facsimile)

**ATTORNEYS FOR PLAINTIFF
INTERVENORS**

# CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing Consent Motion to Intervene as Plaintiffs and Memorandum of Points and Authorities were served by first-class mail, postage prepaid, this 16th day of February, 2006, on:

Robert J. Spagnoletti, Attorney General
David M. Rubinstein, Deputy Attorney General, Public Safety Division
Brenda Walls, Chief, Civil Enforcement Section
Joel D. Armstrong, Assistant Attorney General
Walter Adams, Assistant Attorney General
441 4th Street, N.W., Suite 450N
Washington, D.C. 20001
*Attorneys for Plaintiff District of Columbia*

Alan Balaran
1717 Pennsylvania Ave., N.W., Suite 100
Washington, DC 20006
*Attorney for Defendants Loney and Charles*

Craig A. Holman



United States Court of Appeals,
Ninth Circuit.
UNITED STATES of America, Plaintiff,
and
Elayne Cohen-Strong, Intervenor-Appellant,
v.
CALIFORNIA MOBILE HOME PARK
MANAGEMENT CO.; and Brian Dougher, d/b/a
Costa
Mesa Mobile Estates, Defendants-Appellees.
Nos. 92-55568, 92-56026.

Argued and Submitted Oct. 7, 1993.
Decided July 18, 1994.

Department of Justice brought action alleging that owner and manager of mobile home lot violated Fair Housing Act by failing to make reasonable accommodations in housing. The United States District Court for the Central District of California, Manuel L. Real, J., dismissed action, and denied tenant's motion to intervene. Tenant appealed. The Court of Appeals, Frank A. Kaufman, Senior District Judge, sitting by designation, held that: (1) under Fair Housing Act, tenant was entitled to intervene as of right and to substitute herself for United States on appeal, and (2) provision of Fair Housing Amendments Act (FHAA) imposing affirmative duty upon landlords reasonably to accommodate needs of handicapped persons may require landlords to assume reasonable financial burdens in accommodating handicapped residents.

Reversed and remanded.

West Headnotes

**[1] Federal Courts** ☞776
170Bk776 Most Cited Cases
Court of Appeals reviews district court's order of dismissal for failure to state claim de novo.

**[2] Federal Courts** ☞776
170Bk776 Most Cited Cases
Denial by district court of motion to intervene as of right is reviewed de novo, as are legal conclusions of district court based on statutory construction.

**[3] Federal Civil Procedure** ☞331
170Ak331 Most Cited Cases

**[3] Federal Courts** ☞546
170Bk546 Most Cited Cases
Under Fair Housing Act, plaintiff is entitled to intervene as of right and to substitute herself for United States on appeal. Civil Rights Act of 1968, § 801 et seq., as amended, 42 U.S.C.A. § 3601 et seq.

**[4] Federal Courts** ☞544
170Bk544 Most Cited Cases
Since tenant timely filed her notice of appeal of dismissal of action against landlord brought by Department of Justice under Fair Housing Act after her motion for intervention was effectively denied, her appeal on merits was properly before Court of Appeals. Civil Rights Act of 1968, § 801 et seq., as amended, 42 U.S.C.A. § 3601 et seq.

**[5] Civil Rights** ☞1083
78k1083 Most Cited Cases
Illness.

(Formerly 78k131)
Provision of Fair Housing Amendments Act (FHAA) imposing affirmative duty upon landlords reasonably to accommodate needs of handicapped persons may require landlords to assume reasonable financial burdens in accommodating handicapped residents. Civil Rights Act of 1968, § 804(f)(3)(B), as amended, 42 U.S.C.A. § 3604(f)(3)(B).

**[6] Civil Rights** ☞1077
78k1077 Most Cited Cases

(Formerly 78k131)
To exempt landlord's generally applicable fee rules from scrutiny under Fair Housing Amendments Act (FHAA) would permit landlord to circumvent FHAA's requirements simply by imposing fees for certain matters, rather than by imposing flat bans or other types of restrictive rules. Civil Rights Act of 1968, § 804(f)(3)(B), as amended, 42 U.S.C.A. § 3604(f)(3)(B).

**[7] Civil Rights** ☞1083
78k1083 Most Cited Cases
Illness.

(Formerly 78k131)
In order to trigger review of residential fee rule under provision of Fair Housing Amendments Act (FHAA) imposing affirmative duty upon landlords reasonably to accommodate needs of handicapped persons, challenged fee rule must have potential to deny

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

29 F.3d 1413                                                                    Page 2
29 F.3d 1413, 63 USLW 2056, 6 A.D.D. 175, 5 NDLR P 196
**(Cite as: 29 F.3d 1413)**

persons equal opportunity to use and enjoy dwelling because of their handicap.  Civil Rights Act of 1968, § 804(f)(3)(B), as amended, 42 U.S.C.A. § 3604(f)(3)(B).

**[8] Civil Rights** ☞1083
78k1083 Most Cited Cases
        (Formerly 78k131)
Although residential fees that affect handicapped and nonhandicapped residents equally are proper, fees that merit closer scrutiny are those with unequal impact, imposed in return for permission to engage in conduct that, under Fair Housing Amendments Act (FHAA), landlord is required to permit.  Civil Rights Act of 1968, § 804(f)(3)(B), as amended, 42 U.S.C.A. § 3604(f)(3)(B).

**[9] Civil Rights** ☞1083
78k1083 Most Cited Cases
        (Formerly 78k131)
Inquiry under provision of Fair Housing Amendments Act (FHAA) imposing affirmative duty upon landlords reasonably to accommodate needs of handicapped persons is highly fact-specific, requiring case-by-case determination.  Civil Rights Act of 1968, § 804(f)(3)(B), as amended, 42 U.S.C.A. § 3604(f)(3)(B).

**[10] Civil Rights** ☞1083
78k1083 Most Cited Cases
        (Formerly 78k131)
When reviewing residential fee for potential violation of provision of Fair Housing Amendments Act (FHAA) imposing affirmative duty upon landlords reasonably to accommodate needs of handicapped persons, reviewing court should examine amount of fees imposed, relationship between amount of fees and overall housing cost, proportion of other tenants paying such fees, importance of fees to landlord's overall revenues, and importance of fee waiver to handicapped tenant.  Civil Rights Act of 1968, § 804(f)(3)(B), as amended, 42 U.S.C.A. § 3604(f)(3)(B).
*1414 No appearance for plaintiff.

Paul M. Smith, John P. Relman, Klein, Farr, Smith & Taranto, Washington, DC, for intervenor-appellant.

La Verne J. Bugna, Newport Beach, CA, for defendants-appellees.

Elizabeth M. Brown, Shea & Gardner, Washington, DC, for amici curiae.

Appeal from the United States District Court for the Central District of California.

Before: REINHARDT and T.G. NELSON, Circuit Judges, and KAUFMAN, [FN*] District Judge.

    FN* Honorable Frank A. Kaufman, United States District Judge for the District of Maryland, sitting by designation.

FRANK A. KAUFMAN, Senior District Judge:

Elayne Cohen-Strong, whose young daughter has a respiratory disease requiring the supervision of a home health care aide, appeals the district court's denial of her motion to intervene and dismissal of this action against the owner and manager of the mobile home lot where she and her daughter reside.  Cohen-Strong alleges that the defendants discriminated in violation of the Fair Housing Amendments Act of 1988 ("FHAA"), by refusing to waive guest fees charged for her handicapped daughter's home health care aide.    The principal issue in this appeal is whether the duty imposed under the FHAA to make "reasonable accommodations in rules" on behalf of handicapped persons may require a landlord to waive, in a given instance, fees generally applicable to all residents.  Concluding that generally applicable fees are not immune from scrutiny for compliance with the FHAA's requirement of reasonable accommodation, and that Cohen-Strong is statutorily entitled to intervene, we *1415 reverse the judgment of the district court and remand for further proceedings.

## BACKGROUND AND PROCEDURAL HISTORY

In 1989, plaintiff Cohen-Strong, and her infant daughter, were residing at a mobile home lot leased from defendant Costa Mesa Mobile Estates.  Cohen-Strong's daughter had a respiratory disease which required her to be cared for by a home health care aide.    The Management Company of Costa Mesa Estates demanded payment from Cohen-Strong for the presence of the home medical aide pursuant to its policy of charging residents a fee of $1.50 per day for the presence of long-term guests and $25.00 per month for guest parking.    Cohen-Strong asked the Management Company to waive imposition of the fees on behalf of her daughter; however, that request was refused.    As a result, Cohen-Strong paid $175 for the 2 1/4 months for which fees were assessed.

On September 12, 1989, Cohen-Strong filed a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

29 F.3d 1413
29 F.3d 1413, 63 USLW 2056, 6 A.D.D. 175, 5 NDLR P 196
**(Cite as: 29 F.3d 1413)**

housing discrimination complaint against defendants with the Department of Housing and Urban Development ("HUD"). The Secretary of HUD investigated her complaint, determined that reasonable cause existed to believe defendants had engaged in discriminatory practices, and charged defendants with a violation of the Fair Housing Act, 42 U.S.C. § 3604.

Cohen-Strong elected to have her case prosecuted on her behalf by the Department of Justice ("DOJ") in federal district court pursuant to 42 U.S.C. § 3612(a). The DOJ filed a complaint in the Central District of California alleging that defendants had violated the Fair Housing Act by failing to make reasonable accommodations in housing. On January 6, 1992, defendants moved to dismiss, alleging that the Fair Housing Act does not require landlords to waive fees applicable to other residents generally. The district court judge granted the defendants' motion on January 27, 1992, without a written or oral opinion.

Sixty days after the district judge issued the order of dismissal, Cohen-Strong learned that the United States would not be appealing her case. Acting *pro se*, she requested and received from the district court on April 3, 1992, an extension of time until April 27, 1992, to file a notice of appeal. On April 24, 1992, she timely filed a notice of appeal and also a motion to intervene with the district court. The notice of appeal was accepted on April 24; however, the hearing on the motion to intervene was set for May 18, 1992. On May 18, 1992, Cohen-Strong appeared before the District Court, but was advised that her motion to intervene was not on the court calendar for that day. On June 8, 1992, recently retained counsel for Cohen-Strong refiled the motion for leave to intervene in order to seek a new hearing date.

On June 16, 1992, this Court issued an Order to Show Cause why Cohen-Strong's appeal should not be dismissed for lack of standing given that she was not a party below. Then, on July 13, 1992, the district court denied without prejudice Cohen-Strong's motion to intervene on the grounds that the district court lacked jurisdiction to grant such relief while the case was on appeal to this court. Cohen-Strong subsequently filed a second notice of appeal in response to the July 13 order. Satisfied with Cohen-Strong's response to the Order to Show Cause, this court discharged the Order to Show Cause on August 3, 1992, and consolidated Cohen-Strong's appeal on the merits with her appeal from the district court's denial of intervention.

## STANDARD OF REVIEW

[1] This court reviews a district court's order of dismissal for failure to state a claim *de novo*. *Sosa v. Hiraoka*, 920 F.2d 1451, 1455 (9th Cir.1990). This court accepts "the allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Id.*

[2] The denial by a district court of a motion to intervene as of right is reviewed *de novo*, *Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 926 (9th Cir.1990), as are the legal conclusions of a district court based on statutory construction, *Earles v. United States*, 935 F.2d 1028, 1030 (9th Cir.1991).

## *1416 MOTION TO INTERVENE

[3][4] Cohen Strong's notice of appeal was accepted and lodged with this Court before the district court had ruled with regard to Cohen-Strong's motion to intervene. Thus, the question arises as to whether plaintiff's appeal on the merits is properly before us. The district court did not rule on the motion prior to accepting the notice of appeal. That inaction effectively constituted a denial of that motion. Under the Fair Housing Act, a plaintiff is entitled to intervene as of right and to substitute herself for the United States on appeal. *United States v. Presidio Invs., Ltd.*, 4 F.3d 805, 808 n. 1 (9th Cir.1993). Because Cohen-Strong timely filed her notice of appeal after the motion for intervention was effectively denied, her appeal on the merits is properly before us.

## MOTION TO DISMISS

In granting defendants' motion to dismiss, the district court presumably concluded that the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, is never violated when a landlord refuses to waive generally applicable fees on behalf of a handicapped person. We disagree.

The FHA originally prohibited discrimination on the basis of race, color, religion, or national origin. The Supreme Court has ruled that the FHA must be given a "generous construction" in order to carry out a "policy that Congress considered to be of the highest priority." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 211, 212, 93 S.Ct. 364, 367, 368, 34 L.Ed.2d 415 (1972); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380, 102 S.Ct. 1114, 1125, 71 L.Ed.2d 214 (1982); *United States v. Gilbert*, 813 F.2d 1523, 1526-27 (9th Cir.), *cert. denied*, 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987). The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

29 F.3d 1413                                                              Page 4
29 F.3d 1413, 63 USLW 2056, 6 A.D.D. 175, 5 NDLR P 196
**(Cite as: 29 F.3d 1413)**

generous spirit with which we are to interpret the FHA guides our analysis here.

Congress extended the FHA's protection to handicapped persons in the Fair Housing Amendments Act of 1988 ("FHAA"), <u>Pub.L. 100-430, 102 Stat. 1619.</u> Among the discriminatory practices proscribed by the amended Act is the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." <u>42 U.S.C. § 3604(f)(3)(B).</u> Cohen-Strong argues that a landlord's refusal to waive guest fees for a handicapped person's medical aide may constitute a refusal to make reasonable accommodations, in violation of <u>§ 3604(f)(3)(B).</u>

As the language of <u>§ 3604(f)(3)(B)</u> makes clear, the FHAA imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons. *See* <u>H.R.Rep. No. 100-711</u>, 100th Cong., 2d Sess. 1, 25 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2186. Defendants assert, nonetheless, that this affirmative duty does not entail any requirement that landlords "financially subsidize" the handicapped. We find the effort to distinguish accommodations that have a financial cost from other accommodations unconvincing. Besides the fact that <u>§ 3604</u>'s reasonable accommodations requirement contains no exemption for financial costs to the landlord, <u>[FN1]</u> the history of the FHAA clearly establishes that Congress anticipated that landlords would have to shoulder certain costs involved, so long as they are not unduly burdensome.

> <u>FN1.</u> *Cf.* <u>City of Edmonds v. Washington State Bldg. Code Council, 18 F.3d 802 (9th Cir.1994),</u> (refusing to recognize exemption from reasonable accommodations requirement for zoning ordinance, emphasizing that such an exemption not evident from plain language of FHAA).
> To support an exemption for financial accommodations, defendants point to <u>§ 3604(f)(3)(A),</u> which requires landlords to permit "reasonable modifications of existing premises" as long as the handicapped resident pays the cost of such modifications. However, it is notable that, in contrast to <u>§ 3604(f)(3)(A),</u> the reasonable accommodations requirement described in <u>§ 3604(f)(3)(B)</u> does not specify that the handicapped resident should bear any financial burden imposed.

<u>[5]</u> Congress based the FHAA's reasonable accommodations provision on the "regulations and caselaw dealing with discrimination on the basis of handicap" under section 504 of the Rehabilitation Act, <u>29 U.S.C. § 794,</u> which prohibits discrimination against the handicapped in federally funded programs. *See* <u>H.R.Rep. No. 100-711</u> at 25, *1417 *reprinted in* 1988 U.S.C.C.A.N. at 2186; *see also id.* at 17, *reprinted in* 1988 U.S.C.C.A.N. at 2178 (the FHAA "uses the same definitions and concepts" used in § 504). <u>[FN2]</u> The Supreme Court has held that, under the Rehabilitation Act, a proposed accommodation should not impose "undue financial ... burdens" upon the accommodator, a rule that clearly contemplates *some* financial burden resulting from accommodation. *Southeastern Community College v. Davis, 442 U.S. 397, 412, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979); see also Nelson v. Thornburgh, 567 F.Supp. 369, 380-81 (E.D.Pa.1983)* (requiring employer to expend its own funds to provide readers for blind employees pursuant to Rehabilitation Act), *aff'd,* <u>732 F.2d 146 (3d Cir.1984)</u> (table), *cert. denied,* <u>469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985).</u> Therefore, in light of the legislative history of the FHAA and its incorporation of the Rehabilitation Act's standards regarding reasonable accommodations, we hold that <u>§ 3604(f)(3)(B)</u> may require landlords to assume reasonable financial burdens in accommodating handicapped residents. <u>[FN3]</u>

> <u>FN2.</u> The regulations implementing § 504 describe the reasonable accommodation requirement which Congress expressly included as part of the statutory language of the FHAA. *See, e.g.,* <u>45 C.F.R. § 84.12(a) (1992)</u> (Department of Health and Human Services regulations implementing § 504): "A recipient [of federal funds] shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant...."

> <u>FN3.</u> We note that, although the FHAA was enacted relatively recently, the courts that to date have interpreted its "reasonable accommodations" language have all applied the "undue financial burden" standard developed under the Rehabilitation Act. *See* <u>Oxford House, Inc. v. Township of Cherry Hill, 799 F.Supp. 450, 461 (D.N.J.1992); United States v. City of Taylor, 798 F.Supp. 442, 447</u>

(E.D.Mich.1992); *Oxford House-Evergreen v. City of Plainfield*, 769 F.Supp. 1329, 1344-45 (D.N.J.1991).

Although defendants argue that any fee which is generally applicable to all residents of a housing community cannot be discriminatory, the Act itself is concerned with facially neutral rules of all types. Congress recognized that "[a]nother method of making housing unavailable to people with disabilities has been the application or enforcement of otherwise neutral rules and regulations on health, safety and land-use in a manner which discriminates against people with disabilities.... These and similar practices would be prohibited." H.R. Rep. No. 100-711, at 24, *reprinted in* 1988 U.S.C.C.A.N. at 2185. *See also United States v. Village of Marshall, Wis.*, 787 F.Supp. 872, 879 (W.D.Wis.1991) ("strict adherence to a rule which has the effect of precluding handicapped individuals from residing in the residence was precisely the type of conduct which the Fair Housing Amendment Act sought to overcome with the enactment of § 3604(f)(3)(B)").

[6] Finally, to exempt generally applicable fee rules from scrutiny under the FHAA would permit landlords to circumvent the Act's requirements simply by imposing fees for certain matters, rather than by imposing flat bans or other types of restrictive rules. For example, the regulations interpreting the FHAA provide that a landlord must waive a "no pets" rule for a blind tenant who requires a seeing-eye dog, and that a landlord must waive a "first come, first serve" rule for allocating parking spaces when a mobility-impaired tenant requires a parking space near her unit. 24 C.F.R. § 100.204(b) (1993). Under defendants' interpretation of the FHAA, a landlord might "allow" the blind tenant to have a dog, or the mobility-impaired tenant to have priority for a parking space, while imposing a high fee for exercising that right. In some extreme cases, such a fee could effectively prevent the handicapped tenant from obtaining the needed benefit.

[7][8] In order to trigger review under § 3604(f)(3)(B), the challenged fee rule must, like the rules described above, have the potential to deny persons an "equal opportunity to use and enjoy a dwelling" because of their handicap. There are, of course, many types of residential fees that affect handicapped and non-handicapped residents equally; such fees are clearly proper. Fees that merit closer scrutiny are those with unequal impact, imposed in return for permission to engage in conduct that, under the FHAA, a landlord is required to permit.

**\*1418** [9][10] Some generally applicable fees might be too small to have any exclusionary effect. Other fees might be sustained because to require their waiver would extend a preference to handicapped residents, as opposed to affording them equal opportunity. [FN4] The waiver of others might impose an undue financial burden on the landlord. The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination. *See Edmonds*, 18 F.3d at 806; *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 877-78 (9th Cir.1989) (interpreting reasonable accommodation provision in state antidiscrimination statute), *cert. denied*, 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990); *Chalk v. United States Dist. Court Cent. Dist.*, 840 F.2d 701, 705 (9th Cir.1988) (interpreting reasonable accommodation provision of Rehabilitation Act). In a case such as this one, a reviewing court should examine, among other things, the amount of fees imposed, the relationship between the amount of fees and the overall housing cost, the proportion of other tenants paying such fees, the importance of the fees to the landlord's overall revenues, and the importance of the fee waiver to the handicapped tenant.

> FN4. For example, the landlord of an apartment complex may charge all residents a monthly fee for parking their car. Although a handicapped resident may *require* a car far more than other residents, a waiver of the car fee would put him in a privileged position in relation to other residents.
>
> Here, while we remand for further inquiry into the merits of the present fee, it seems likely that few other residents would have a "guest" requiring an extra parking space every day. It is thus much less probable that waiver of guest fees would give Cohen-Strong an advantage over other residents.

In the present case, it is clear that the factual inquiry was prematurely terminated. Final judgment was granted solely on the pleadings: no evidence or testimony was heard on defendants' motion to dismiss and no discovery had yet been conducted. Cohen-Strong thus had no opportunity to develop a record to support her claim of discrimination. She therefore was unable to demonstrate that the fees involved had the effect of denying her an equal opportunity to use and enjoy her dwelling. It is axiomatic that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

29 F.3d 1413                                                                Page 6
29 F.3d 1413, 63 USLW 2056, 6 A.D.D. 175, 5 NDLR P 196
**(Cite as: 29 F.3d 1413)**

claim that would entitle him to relief." _Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957);  see also Jackson v. Southern Calif. Gas Co., 881 F.2d 638, 643 (9th Cir.1989)_ (same).    Since we hold that a landlord's refusal to waive generally applicable fees may, under some circumstances, constitute discrimination on the basis of handicap, Cohen-Strong must be afforded the opportunity to develop a full record in support of her claim.

We are not presently deciding that the fees in this case were improperly assessed.   We hold only that such charges must be examined on a case-by-case basis to determine whether, in a given case, a waiver of the charge, in whole or at least in part, "may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling," _42 U.S.C. § 3604(f)(3)(B)_, and whether such waiver would impose an undue burden on the landlord.   Therefore, we reverse and remand to the district court for proceedings consistent with this opinion.

**REVERSED** and **REMANDED.**

29 F.3d 1413, 63 USLW 2056, 6 A.D.D. 175, 5 NDLR P 196

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



107 F.3d 1374                                                 Page 1
107 F.3d 1374, 36 Fed.R.Serv.3d 1176, 20 A.D.D. 658, 10 NDLR P 276, 97 Cal. Daily Op. Serv. 1414, 97 Daily Journal D.A.R. 2088
(Cite as: 107 F.3d 1374)

H

Briefs and Other Related Documents

United States Court of Appeals,
Ninth Circuit.
UNITED STATES of America, Plaintiff,
and
Elayne Cohen-Strong, Intervenor-Appellant,
v.
CALIFORNIA MOBILE HOME PARK
MANAGEMENT COMPANY; Brian M. Dougher,
dba: Costa
Mesa Mobile Estates, Defendants-Appellees.
No. 95-55599.

Argued and Submitted Oct. 9, 1996.
Decided Feb. 27, 1997.

Department of Justice brought action alleging that owner and manager of mobile home lot violated **Fair Housing Act** by failing to make reasonable accommodations in housing. Following District Court's dismissal of action and denial of tenant's motion to **intervene**, the Court of Appeals, 29 F.3d 1413, reversed and remanded. On remand, the United States District Court for the Central District of California, Manuel L. Real, J., entered judgment for owner and manager. Tenant appealed. The Court of Appeals, Brunetti, Circuit Judge, held that: (1) treatment of tenant as substituted party rather than intervening party on remand was error, as tenant had right to **intervene**; (2) answer to **intervenor** complaint filed by tenant, rather than answer to original complaint filed by United States, was "last pleading" directed to jury triable issue, for purposes of determining whether right to demand jury trial was waived; (3) tenant's participation in bench trial did not constitute waiver of her right to jury trial; and (4) error resulting from denial of tenant's right to demand jury trial was harmless.

Affirmed.

West Headnotes

**[1] Federal Courts** ⟫952
170Bk952 Most Cited Cases
Treatment of tenant as substituted party rather than

intervening party on remand of action under **Fair Housing Act** was error, though tenant was substituted for United States for purposes of appeal; substitution was granted because United States did not participate in appeal, tenant was entitled to **intervene** as of right under Act, and tenant did not qualify for substitution or file motion to be substituted. Civil Rights Act of 1968, § 812(o)(2), as amended, 42 U.S.C.A. § 3612(o)(2); Fed.Rules Civ.Proc.Rule 25, 28 U.S.C.A.

**[2] Jury** ⟫25(6)
230k25(6) Most Cited Cases
Answer to **intervenor** complaint filed by tenant in action under **Fair Housing Act**, rather than answer to original complaint filed by United States, was "last pleading" directed to jury triable issue for purposes of determining whether right to demand jury trial was waived. Civil Rights Act of 1968, § 812, as amended, 42 U.S.C.A. § 3612; Fed.Rules Civ.Proc.Rule 38, 28 U.S.C.A.

**[3] Jury** ⟫28(10)
230k28(10) Most Cited Cases
Plaintiff's participation in bench trial did not constitute waiver of her right to jury trial, despite plaintiff's failure to demand jury trial at bench trial itself, where plaintiff demanded jury trial repeatedly prior to bench trial.

**[4] Civil Rights** ⟫1083
78k1083 Most Cited Cases
(Formerly 78k131)

**[4] Federal Courts** ⟫893
170Bk893 Most Cited Cases
Tenant failed to establish prima facie case that failure of mobile home lot owner and manager to waive guest and parking fees for caregiver of tenant's handicapped child was violation of Fair Housing Act, and therefore, error resulting from district court's denial of tenant's right to demand jury trial was harmless, where tenant produced no evidence that assessment of fees for caregiver caused denial of tenant's use and enjoyment of her dwelling. Civil Rights Act of 1968, § 804(f)(3), as amended, 42 U.S.C.A. § 3604(f)(3).

**[5] Federal Courts** ⟫951.1
170Bk951.1 Most Cited Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

107 F.3d 1374                                                              Page 2
107 F.3d 1374, 36 Fed.R.Serv.3d 1176, 20 A.D.D. 658, 10 NDLR P 276, 97 Cal. Daily Op. Serv. 1414, 97 Daily
Journal D.A.R. 2088
**(Cite as: 107 F.3d 1374)**

District court made sufficient findings on remand to
support conclusion that mobile home lot owner's
failure to waive guest and parking fees for caregiver
of tenant's handicapped daughter was not failure to
make "reasonable accommodation" under Fair
Housing Act, despite court's failure to make explicit
findings on each of five factors outlined by court of
appeals, where district court made 19 findings of fact
relating to four of five outlined factors. Civil Rights
Act of 1968, § 804(f)(3), as amended, 42 U.S.C.A. §
3604(f)(3).

**[6] Federal Civil Procedure** ⊂⌾⊃ 2282.1
170Ak2282.1 Most Cited Cases
As general rule, district court must set forth
sufficiently detailed consideration of most relevant
factors to allow for meaningful review on appeal.
**\*1375** Christopher Brancart and Elizabeth Brancart,
Pescadero, CA; John P. Relman, Washington
Lawyers' Committee for Civil Rights & Urban
Affairs, Washington, DC; Timothy C. Hester,
Caroline M. Brown, Covington & **\*1376** Burling,
Washington, DC, for the intervenor-appellant.

Daniel L. Rasmussen, Jeffrey K. Brown, Payne &
Fears, Irvine, CA, for the defendants-appellees.

Appeal from the United States District Court for the
Central District of California, Manuel L. Real,
District Judge, Presiding. D.C. No. CV-91- 04528-R.

Before: BRUNETTI, TROTT and THOMAS,
Circuit Judges.

BRUNETTI, Circuit Judge:

The United States filed a civil rights complaint on
behalf of Elayne Cohen-Strong, which the district
court dismissed. The district court then denied
Cohen-Strong's post-judgment motion to intervene,
and in a prior appeal we reversed both the dismissal
and the denial of intervention and remanded the case
to the district court. On remand the district court did
not allow Cohen-Strong to file a new complaint
demanding a jury trial. It later held a one-day bench
trial and entered judgment for defendants. We hold
that the district court erred in not allowing Cohen-
Strong to file a demand for a jury trial, but that
because no reasonable jury could find for Cohen-
Strong, the denial was harmless error.

**FACTS AND PROCEEDINGS BELOW**
This is an action under Title VIII of the Civil Rights
Act of 1968 ("Fair Housing Act" or "FHA"),

amended by 42 U.S.C. § § 3601-3631 (1988),
originally brought by the United States on behalf of
appellant Elayne Cohen-Strong ("Cohen-Strong"), a
mother of a handicapped child and a resident of the
Costa Mesa Mobile Estates. Cohen-Strong alleges
that she was discriminated against on the basis of
handicap when appellees Brian Dougher ("Dougher")
and the California Mobile Home Park Management
Company ("California Mobile Home"), which
Dougher owns and operates, failed to make a
reasonable accommodation under Section 804 of the
FHA. Specifically, Cohen-Strong alleges that
California Mobile Home failed to waive guest and
parking fees for her daughter's babysitter in the
amount of $175. Cohen-Strong argues that the fees
assessed constituted a financial burden such that
California Mobile Home was required to waive the
fees to allow her to employ a babysitter for her
daughter. A more complete description of the
underlying facts can be found in the "Background
and Procedural History" as stated in the first appeal in
this case. _United States v. California Mobile Home
Park Mgmt. Co., 29 F.3d 1413, 1415 (9th Cir.1994)_
[hereinafter _California Mobile Home I_ ].

In _California Mobile Home I,_ this court held that:
(1) Cohen-Strong was entitled to intervene as of right
and substitute herself for the United States on appeal,
and (2) the FHA may require California Mobile
Home to waive the fees. On the fee waiver issue,
this court suggested five factors that, among other
things, should be examined by the district court on
remand. _Id._ at 1418.

On remand, Cohen-Strong filed a new motion for
leave to intervene before the district court that would
permit her to proceed alongside the United States as
plaintiff. Cohen-Strong also lodged a complaint in
intervention as required by Federal Rule of Civil
Procedure 24(c). The complaint echoed the
Government's claim of discrimination under the
FHA, but also included supplemental state law claims
and demanded a jury trial.

The district court confused its ruling on Cohen-
Strong's motion to intervene making it unclear
whether it was allowing her to intervene or to be
substituted in the action. First, it stated that Cohen-
Strong's "motion to intervene is granted." In the next
sentence, however, the court ruled that "Cohen-
Strong is substituted for the United States of
America." When Cohen-Strong's attorney inquired
if he should prepare a complaint, the court said: "No.
She is substituted for the United States of America.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

107 F.3d 1374                                                                                   Page 3
107 F.3d 1374, 36 Fed.R.Serv.3d 1176, 20 A.D.D. 658, 10 NDLR P 276, 97 Cal. Daily Op. Serv. 1414, 97 Daily
Journal D.A.R. 2088
**(Cite as: 107 F.3d 1374)**

I have a complaint on file. That's what she wanted to do before the Court of Appeals, and that's what the Court of Appeals ordered me to do." One week after being substituted as plaintiff, Cohen-Strong moved to file a first amended complaint, in which she again pled violation of supplemental state law claims and again demanded a jury trial. This motion was denied. The United States moved **\*1377** for reconsideration of the court's order dismissing it from the case, and that motion, too, was denied. In February 1995, the district court held a one-day bench trial and ruled for the defendants. In its findings of fact and conclusions of law, the court ruled that "a waiver of the guest and parking fees at issue was not necessary to afford Ms. Cohen-Strong equal opportunity to use and enjoy her dwelling at Costa Mesa Estates." Cohen-Strong now complains that the district court erred by denying her right to a jury trial and that the judgment of the district court must be reversed because a reasonable jury could have found in her favor.

### DISCUSSION

### I.
### Right to a Jury Trial

There is no question that the FHA entitles Cohen-Strong to a jury trial for her discrimination claim. *See Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 1008-09, 39 L.Ed.2d 260 (1974). The question presented in this case is whether Cohen-Strong waived her right to a jury trial by waiting three years after the action began to demand it. Entitlement to a jury trial in federal court is a question of law reviewed *de novo. KLK, Inc. v. United States Dep't of Interior,* 35 F.3d 454, 455 (9th Cir.1994). The unconstitutional denial of a jury trial must be reversed unless the error is harmless. *Fuller v. City of Oakland,* 47 F.3d 1522, 1533 (9th Cir.1995).

The district court ruled that Cohen-Strong waived her right to a jury trial. Defendants offer three justifications for the district court's decision. First, they argue that Cohen-Strong is a substituted party bound by the United States' failure to demand a jury trial in its original complaint. Second, they argue that even if Cohen-Strong is an intervenor-plaintiff, she cannot demand a jury trial three years after the United States filed this action on her behalf. Third, defendants argue that Cohen-Strong waived her right to a jury trial when she participated in the bench trial without objection. We will address each argument in turn.

### A. Cohen-Strong's Status on Remand

[1] The district court erred by treating Cohen-Strong as a substituted party rather than as an **intervening** party. In *California Mobile Home I,* we noted that the district court's acceptance of Cohen-Strong's notice of appeal, and its failure to rule on Cohen-Strong's motion to **intervene,** "effectively constituted a denial of that motion." 29 F.3d at 1416. We then reversed the district court's denial, holding that "[u]nder the **Fair Housing Act,** a plaintiff is entitled to **intervene** as of right and to substitute herself for the United States on appeal." *Id.*

The district court interpreted this language to mean that Cohen-Strong was to be substituted for the United States *on remand.* This interpretation is contrary to the express language of our opinion, which held that she was entitled to substitute herself for the United States *on appeal.* In other words, this court decided that she would be substituted for the United States for purposes of the appeal (because the United States had chosen not to participate in the appeal), but that the FHA entitled her to intervene in the case on remand. As we often do, we concluded *California Mobile Home I* by stating: "we reverse and remand to the district court for proceedings consistent with this opinion." *Id.* at 1418. In light of our reversal of the district court's denial of Cohen-Strong's motion to intervene, the district court was clearly required to grant Cohen-Strong's motion to intervene on remand. Its failure to do so was error.

Further indicating the district court's error in denying Cohen-Strong's motion to intervene is the fact that this court's ruling in *California Mobile Home I* was based on the FHA, which provides: "Any aggrieved person with respect to the issues to be determined in a civil action under this subsection may intervene as of right in that civil action." 42 U.S.C. § 3612(*o*)(2). Thus, the plain language of the statute relied upon by this court indicates that Cohen-Strong's right was to *intervene,* not to be substituted for the United States. Finally, Cohen-Strong has never filed a motion to be substituted for the United **\*1378** States. Rule 25 [FN1] allows for "Substitution of Parties" only upon death, incompetence, or transfer of interest. None of these circumstances applies to Cohen-Strong's claim, and thus, she is not qualified for substitution under Rule 25.

> FN1. All references to rules are to the Federal Rules of Civil Procedure.

For the reasons stated above, Cohen-Strong is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

107 F.3d 1374                                                                                                Page 4
107 F.3d 1374, 36 Fed.R.Serv.3d 1176, 20 A.D.D. 658, 10 NDLR P 276, 97 Cal. Daily Op. Serv. 1414, 97 Daily
Journal D.A.R. 2088
(Cite as: 107 F.3d 1374)

properly an intervenor-plaintiff in the action, and we now turn to the question whether, as an intervenor-plaintiff, Cohen-Strong was entitled to demand a jury trial three years after the action was commenced by the United States.

### B. Timeliness of Intervenor's Demand for Jury Trial

[2] Although it acknowledges that we "must indulge every reasonable presumption against the waiver of the jury trial," _United States v. Nordbrock_, 941 F.2d 947, 949-50 (9th Cir.1991), California Mobile Home argues that Rule 38 precludes Cohen-Strong's current demand for a jury trial. We disagree.

A demand for a jury trial must be made within ten days of the last pleading directed to a jury triable issue. Fed.R.Civ.P. 38(b). Failure to follow this procedure constitutes a waiver of the right to demand a jury trial. Fed.R.Civ.P. 38(d). The parties disagree as to which document ought to be considered "the last pleading directed to a jury triable issue" for purposes of the rule. California Mobile Home argues that the relevant document is its answer to the United States' original complaint in 1991, while Cohen-Strong argues it is defendants' answer to her intervenor complaint filed in 1994. We agree with Cohen-Strong and hold for purposes of Rule 38(b), that the last pleading directed to a jury triable issue is the answer to the intervenor's complaint.

The only other court to have addressed this issue reached the same conclusion we do today. _United States v. Country Club Garden Owners Ass'n, Inc._, 159 F.R.D. 400 (E.D.N.Y.1995). In _Country Club_, plaintiffs, the Palascianos, filed a complaint with the Department of Housing and Urban Development under section 810(a) of the FHA alleging that their landlords discriminated against them on the basis of disability. _Id._ at 401. As in this case, the United States commenced the action pursuant to sections 812(o) and 814 of the Act, and did not demand a jury trial. _Id._ at 401-02. Subsequent to the initial pleadings filed by the United States, the Palascianos moved to intervene and demanded a jury trial. _Id._ at 402. The defendants moved to strike the Palascianos' jury demand, on the ground that the Palascianos waived their right to a jury trial by waiting two years after the close of the pleadings to demand it. _Id._

The _Country Club_ Court held that the jury demand was timely. _Id._ at 406. It reasoned that under Rule 38(b), the last pleading contesting the triable issues

was the defendants' answer to the intervenor complaint, not the defendants' answer to the initial complaint filed by the United States. _Id._ at 405. In explaining this result the court acknowledged that in a typical case a jury demand in a subsequent complaint is untimely unless new material issues are raised. However, the court noted that this rule has been applied in situations where the parties remain the same. After intervention, the parties to the litigation have changed. Indeed, intervening parties have full party status in the litigation commencing with the granting of the motion to intervene. _International Union of Mine, Mill and Smelter Workers, Locals No. 15 v. Eagle-Picher Mining & Smelting Co._, 325 U.S. 335, 338, 65 S.Ct. 1166, 1167-68, 89 L.Ed. 1649 (1945); William W. Schwarzer, et al., _California Practice Guide: Federal Civil Procedure Before Trial_ 7: 162 (Rev.1996). As in _Country Club_, it was not until Cohen-Strong intervened that she was able to file a complaint, and thus was able to make a demand for a jury trial. The _Country Club_ court recognized the unfairness that would result if she were denied her right to a jury trial where she demanded her right to a jury at the earliest moment she was able. That court stated emphatically:

> It seems incorrect to this Court to rule that the Palascianos are precluded from obtaining their constitutionally mandated jury trial, when they have been unable *1379 heretofore to appear as parties to this case and make such a demand. Indeed, such a result seems suspect, as any intervenor who has not filed a motion to intervene until after the answer to the complaint or reply to a counterclaim, but whose intervention is deemed timely under applicable law, would be precluded from ever receiving a jury trial. This result would be absurd and totally unfair.

_Country Club_, 159 F.R.D. at 405. We agree and adopt this rationale as the law of the Circuit. [FN2]

> FN2. We hold only that where the court grants an intervention of right, the intervenors' right to demand a jury trial is not waived under Rule 38(d). Nothing in this opinion conflicts with the rule that courts may deny intervention of right under 24(a) where the application for intervention is untimely. _See, e.g., United States ex rel. Killingsworth v. Northrop Corp._, 25 F.3d 715, 719-20 (9th Cir.1994); _United States ex rel. McGough v. Covington Techs. Co._, 967 F.2d 1391, 1393-94 (9th Cir.1992). Neither does this opinion conflict with the rule

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

107 F.3d 1374
Page 5
107 F.3d 1374, 36 Fed.R.Serv.3d 1176, 20 A.D.D. 658, 10 NDLR P 276, 97 Cal. Daily Op. Serv. 1414, 97 Daily Journal D.A.R. 2088
(Cite as: 107 F.3d 1374)

adopted by some courts that allows the court to grant a conditional intervention. *See Pennsylvania ex rel. Feiling v. Sincavage, 439 F.2d 1133, 1134 (3d Cir.1971)* (allowing wife to intervene in husband's suit, but not allowing her to demand a jury trial); *see also FTC v. American Legal Distribs., Inc., 890 F.2d 363 (11th Cir.1989)* (affirming denial of motion to intervene as to previously resolved issues, and reversing denial as to unresolved issues).

California Mobile Home attempts to distinguish *Country Club* on two bases. First, it argues that in *Country Club,* the United States and the Palascianos had "divergent interests." In *Country Club,* the United States was apparently motivated by setting precedent, while the plaintiffs were more interested in punitive damages. Contrary to defendants argument, however, the fact that the United States' interests were different than the Palascianos does not distinguish *Country Club* from this case. Indeed, the very statutory scheme asserted by Cohen-Strong, which allows "any aggrieved" party to intervene as of right, acknowledges the likelihood of some divergent interests in any case. 42 U.S.C. § 3612(*o*)(2). This was precisely the position taken by the United States at the hearing on Cohen-Strong's motion to intervene. The attorney for the United States explained to the district court: "The United States' interest are [sic] not necessarily the same as an intervenor or complainant. That's why the statute gives the complainant a right to intervene." Thus, the fact that the divergent interests were more apparent in *Country Club* does not distinguish the case, divergent interests are inherent in the statute. Second, defendant distinguishes the case by falling back into its misconceived assertion that Cohen-Strong was substituted in this case, whereas the Palascianos intervened in *Country Club.* For reasons stated above, this understanding is incorrect.

**C. Waiver by Failure to Object at Bench Trial**

[3] In addition to their waiver argument based on Rule 38, defendants argue that Cohen-Strong waived her right to a jury trial by participating in the bench trial without objection. *See White v. McGinnis, 903 F.2d 699, 703 (9th Cir.1990)* (en banc). However, because Cohen-Strong objected several times prior to trial, we reject defendants' argument.

In *White,* the plaintiff prisoner timely demanded a jury trial for his civil rights suit. *Id.* at 700. The district court apparently overlooked or ignored the request and notified the parties that the case was set for a bench trial. *Id.* Plaintiff then participated in the bench trial without objection. *Id.* This court, sitting en banc, held that "knowing participation in a bench trial without objection is sufficient to constitute a jury waiver." *Id.* at 703. Defendant argues that *White* requires a plaintiff to object at the bench trial itself in order to preserve the right to a jury trial on appeal, no matter how vigorously a party contests the issue prior to trial. That would be reading too much into *White.*

In *White,* the plaintiff "never brought his prior jury demand to the district court's attention during the five and one-half month period between the bench trial notice and the trial." *Id.* at 700. Nor did he object at trial or before the court entered judgment. *Id.* Nor did he file a motion for a new trial. *Id.* Rather, he raised the issue for the first time on appeal. *Id.* at 700 n. 4. Emphasizing *1380 White's failure to bring the jury demand to the attention of the court, the *White* Court analogized his failure to that of an attorney in a similar case where, "The totality of the circumstances here [manifested] that the attorney slept on his client's rights." *Id.* at 702 (quoting *Pope v. Savings Bank of Puget Sound, 850 F.2d 1345, 1355 n. 29 (9th Cir.1988)* (internal quotations omitted)).

In this case Cohen-Strong sufficiently contested the issue of her right to a jury trial. Here, Cohen-Strong included her demand for a jury trial in the complaint lodged with her motion to intervene. Unlike in *White,* when the district court did not allow Cohen-Strong to file the complaint, she then sought reconsideration of the court's decision. One week after the court denied her jury demand, Cohen-Strong again moved to submit a first amended complaint, with another demand for a jury trial. In support of her motion, Cohen-Strong filed a detailed Memorandum of Points and Authorities arguing her position and California Mobile Home submitted its own Memorandum of Points and Authorities. Cohen-Strong then filed a reply. After inviting oral argument, the court denied Cohen-Strong's motion to file an amended complaint.

While *White* has become the leading jury waiver case in the circuit, *Fuller v. City of Oakland, 47 F.3d 1522, 1531 (9th Cir.1995),* no Court has expanded it to find a waiver of a right to a jury trial where a plaintiff actively contests the district court's decision to refuse the demand. For example, in *United States v. Nordbrock, 941 F.2d 947 (9th Cir.1991),* the court found that plaintiff's filing a "continuing demand" for a jury trial after the district court set the case for a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

107 F.3d 1374                                                                          Page 6
107 F.3d 1374, 36 Fed.R.Serv.3d 1176, 20 A.D.D. 658, 10 NDLR P 276, 97 Cal. Daily Op. Serv. 1414, 97 Daily
Journal D.A.R. 2088
(Cite as: 107 F.3d 1374)

bench trial was sufficient to preserve the issue on appeal. *Id.* at 949. In *Nordbrock,* which was decided after *White,* the plaintiff did not argue his position as adamantly as Cohen-Strong has in this case. We hold Cohen-Strong sufficiently objected the district court's denial of her right to a jury trial.

## II.
## Harmless Error

[4] Although we hold that the district court erred by denying Cohen-Strong her right to demand a jury trial, we nonetheless affirm the judgment of the district court, as its error was harmless. Upon the evidence presented to the district court, no reasonable jury could have found for Cohen-Strong. *See Fuller v. City of Oakland, 47 F.3d 1522, 1533 (9th Cir.1995).*

Cohen-Strong failed to introduce any evidence of an essential element of a prima facie case under 42 U.S.C. § 3604(f)(3). To establish her claim, Cohen-Strong was required to show that: (1) her daughter suffers from a handicap as defined in 42 U.S.C. § 3602(h); (2) defendants knew of her daughter's handicap or should reasonably be expected to know of it; (3) accommodation of the handicap "may be necessary" to afford Cohen-Strong an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation. 42 U.S.C. § 3604(f)(3)(B); *see Roseborough v. Cottonwood Apartments, No. 94 C 3708, 1996 WL 490717, at *2 (N.D.Ill.1996).* At trial, Cohen-Strong failed to show that the waiver of the fees "may be necessary" to afford her an equal opportunity to use and enjoy her dwelling. In other words, Cohen-Strong failed to show that the assessment of the fees *caused* the denial of her use and enjoyment of her dwelling. *See Smith & Lee Assocs., Inc. v. City of Taylor, 102 F.3d 781, 795 (6th Cir.1996)* (interpreting "necessary" in § 3604(f)(3)(B) to mean that plaintiffs "must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice"); *see also Gamble v. City of Escondido, 104 F.3d 300, 306-07 (9th Cir.1997).*

Both at trial and on appeal, Cohen-Strong relied heavily on this court's prior opinion, in which we explained:

> The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination. In a case such as this one, a reviewing court should examine, among other things, the amount of fees imposed, the relationship between the amount of

fees and the overall housing cost, the proportion of other tenants paying such fees, the importance of the fees to the landlord's *1381 overall revenues, and the importance of the fee waiver to the handicapped tenant.
*California Mobile Home I, 29 F.3d at 1418* (citations omitted).

Each of the factors we discussed is relevant to the balancing of interests inherent in any "reasonableness" determination. This discussion of the "reasonableness" element of an FHA claim did not relieve plaintiff of her obligation to meet each element of her claim. Plaintiff must first show that defendants' policy caused an interference with her use and enjoyment. Without a causal link between defendants' policy and plaintiff's injury, there can be no obligation on the part of defendants to make a reasonable accommodation. In the prior appeal, we reviewed only the district court's dismissal of plaintiff's complaint. In that appeal defendants argued that they could not, under any set of circumstances, be required to waive their generally applicable fees. We disagreed with defendants and explained that the district court must develop the facts of the case before it could determine whether defendants would be required to waive the fees. Having the benefit of a full record, including transcripts of the one-day bench trial, it is clear that Cohen-Strong failed to prove her prima facie case.

In this case, plaintiff asks for a reasonable accommodation not for herself, but for a caregiver, Ms. Dawson. Plaintiff failed to show why Dawson's convenience is necessary for her own use and enjoyment of her home. Plaintiff submitted no evidence explaining why Dawson could not have parked outside of the mobile home park and still have provided caregiver services to Cohen-Strong's daughter. The policy at issue in this case is the fee that defendants charged for Dawson parking her car at Cohen-Strong's trailer home. There is no evidence that Dawson's car was necessary to provide services for Cohen-Strong's daughter. Further, Cohen-Strong introduced no evidence explaining why she did not require Dawson to pay the guest and parking fees. Nor did Cohen-Strong explain why Dawson's employer, the State of California, did not pay the parking fees. It is not unusual for any working person to incur parking expenses at their place of employment. The fact that some of these people may work with handicapped individuals does not require that their parking fees must be waived.

107 F.3d 1374                                                                 Page 7
107 F.3d 1374, 36 Fed.R.Serv.3d 1176, 20 A.D.D. 658, 10 NDLR P 276, 97 Cal. Daily Op. Serv. 1414, 97 Daily
Journal D.A.R. 2088
(Cite as: 107 F.3d 1374)

This case is distinguishable from a line of cases under § 3604(f)(3) requiring landlords to make reasonable accommodations by providing handicapped parking spaces for handicapped tenants. *See, e.g., Jankowski Lee & Assoc. v. Cisneros,* 91 F.3d 891 (7th Cir.1996) (affirming HUD order issued under FHA sanctioning apartment owner for failure to provide parking for tenant with multiple sclerosis); *Roseborough,* 1996 WL 490717 (same). [FN3] The rationale in these cases is that the handicapped person faces injury or pain by having to travel long distances from the house to the car. In these cases causation is clear--without a parking space close to the apartment, the handicapped individual's use and enjoyment of the dwelling is diminished. Once this link is established, only then do we consider whether it is reasonable to require *1382 the manager to provide the accommodation. By contrast, in this case, causation is one step removed. In this case the policy is not directed at the handicapped person, it is directed at a third party. Here, Cohen-Strong failed to show that the policy prevented a third party from being able to provide care services, or that it diminished the care she could receive. For the reasons stated above, we hold that no reasonable jury could have found for Cohen-Strong. Accordingly, the district court's denial of Cohen-Strong's right to a jury trial was harmless error.

FN3. The vast majority of reported cases brought under § 3604(f)(3) involve developers' requests for variances of zoning ordinances that would allow them to build housing for handicapped persons. *See, e.g., Elderhaven, Inc. v. City of Lubbock,* 98 F.3d 175 (5th Cir.1996) (affirming summary judgment against elderly care company in action against city for special exception from single-family zoning ordinance); *Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096 (3d Cir.1996) (holding township liable for failure to grant conditional use permit for nursing home developer); *Erdman v. City of Fort Atkinson,* 84 F.3d 960 (7th Cir.1996) (denying developer's suit seeking damages for city's denial of conditional use permit for construction of home for elderly care); *Brandt v. Village of Chebanse,* 82 F.3d 172 (7th Cir.1996) (rejecting suit by developer for zoning variance to accommodate housing for handicapped persons); *Oxford House-C v. City of St. Louis,* 77 F.3d 249 (8th Cir.1996) (rejecting suit by group home claiming city could not enforce zoning

ordinance limiting number of unrelated residents to eight); *United States v. Village of Palatine,* 37 F.3d 1230 (7th Cir.1994) (rejecting FHA claim where group home failed to afford city opportunity to make reasonable accommodation); *Marbrunak, Inc. v. City of Stow,* 974 F.2d 43 (6th Cir.1992) (holding that city's failure to impose special safety standards for protection of developmentally disabled persons violated FHA). In these cases, causation poses no independent hurdle for the plaintiffs. The city policies directly interfere with use and enjoyment because they prevent the housing from being built.

### III.
### District Court's Failure to Follow Instructions on Remand

[5][6] Finally, Cohen-Strong argues that the district court failed to follow this court's instructions on remand by failing to make explicit findings as to each of the five factors outlined by this court. We reject this contention. As a general rule, a district court must set forth sufficiently detailed consideration of the most relevant factors to allow for meaningful review on appeal. *Probe v. State Teachers' Retirement Sys.,* 780 F.2d 776, 785 (9th Cir.1986). Here, the district court made nineteen findings of fact, which related to four out of the five factors discussed in *California Mobile Home I.* Those findings were sufficient to allow for meaningful review. The five factors discussed in the first appeal were not intended to be applied mechanically by the district court. Instead, the factors were suggested as guideposts to help direct the district court's analysis. We conclude that the district court did make sufficient findings to support its legal conclusion that "a waiver of the guest and parking fees at issue was not necessary to afford Ms. Cohen-Strong equal opportunity to use and enjoy her dwelling at Costa Mesa Mobile Estates."

**AFFIRMED.**

107 F.3d 1374, 36 Fed.R.Serv.3d 1176, 20 A.D.D. 658, 10 NDLR P 276, 97 Cal. Daily Op. Serv. 1414, 97 Daily Journal D.A.R. 2088

### Briefs and Other Related Documents (Back to top)

• 1996 WL 33487492 (Appellate Brief) Reply Brief for Intervenor-Appellant Elayne Cohen-Strong (Apr. 04, 1996)Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

107 F.3d 1374                                                                                    Page 8
107 F.3d 1374, 36 Fed.R.Serv.3d 1176, 20 A.D.D. 658, 10 NDLR P 276, 97 Cal. Daily Op. Serv. 1414, 97 Daily
Journal D.A.R. 2088
**(Cite as: 107 F.3d 1374)**

• 1996 WL 33487493   (Appellate Brief) Brief for
Defendants-Appellees California Mobile Home Park
Management Co. and Brian Dougher d/b/a/ Costa
Mesa Mobile Estates (Mar. 07, 1996)Original Image
of this Document (PDF)

• 1996 WL 33487491   (Appellate Brief) Brief for
Intervenor-Appellant Elayne Cohen-Strong (Jan. 22,
1996)Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



4 F.3d 805                                                                                    Page 1
4 F.3d 805
**(Cite as: 4 F.3d 805)**

**c**

United States Court of Appeals,
Ninth Circuit.
UNITED STATES of America, Plaintiff,
v.
PRESIDIO INVESTMENTS, LTD., Defendant.
Edward SANDQUIST, Defendant-Appellee,
v.
Janet BLAIR, Applicant in Intervention-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
PRESIDIO INVESTMENTS, LTD., Defendant.
Edward SANDQUIST, Defendant-Appellee,
v.
Janet BLAIR, Applicant in Intervention-Appellant.
Nos. 92-15176, 92-15254.

Argued and Submitted May 13, 1993.
Decided Sept. 10, 1993.

Attorney General brought action against landlord on behalf of tenant for sex discrimination. The United States District Court for the District of Arizona, Alfredo C. Marquez, J., granted summary judgment for landlord. Attorney General appealed and then moved to dismiss appeal, and tenant filed motion to intervene. The Court of Appeals, Trott, Circuit Judge, granted tenant's motion to intervene, and held that 1988 amendments to Fair Housing Act applied retroactively.

Reversed and remanded.

West Headnotes

**[1] Federal Courts** ☞776
170Bk776 Most Cited Cases
Court of Appeals reviews grant of summary judgment de novo, determining whether, viewing evidence in light most favorable to nonmoving party, there are any genuine issues of material fact and whether district court properly applied relevant substantive law.

**[2] Civil Rights** ☞1006
78k1006 Most Cited Cases
(Formerly 78k102.1)
Tenant's Fair Housing Act claim against landlord for sex discrimination was "pending" when amendments to Act went into effect, where complaint was timely filed within 180 days of alleged discriminatory

practices and Department of Housing and Urban Development (HUD) had not yet taken final action with respect to her charge when amendments went into effect. Civil Rights Act of 1968, §§ 810, 812, as amended, 42 U.S.C.A. §§ 3610, 3612.

**[3] Civil Rights** ☞1006
78k1006 Most Cited Cases
(Formerly 78k102.1)
The 1988 amendments to Fair Housing Act were procedural rather than substantive and, thus, amendments applied to tenant's sex discrimination action against landlord which was pending on effective date of amendments. Civil Rights Act of 1968, §§ 810, 812, as amended, 42 U.S.C.A. §§ 3610, 3612.
**\*805** Thomas J. Henderson, Lawyers' Committee for Civil Rights Under Law, Washington, DC, for applicant in intervention-appellant.

Richard C. Henry, Tucson, AZ, for defendant-appellee.

**\*806** Appeal from the United States District Court for the District of Arizona.

Before: REINHARDT, TROTT, and RYMER, Circuit Judges.

TROTT, Circuit Judge:

Appellant Janet Blair appeals the district court's grant of summary judgment against the original plaintiff (the United States of America), and in favor of Presidio Investments, Ltd. ("Presidio Investments") and Edward Sandquist. The government on behalf of appellant alleged that Edward Sandquist, her landlord, discriminated against her on the basis of her sex in violation of the Fair Housing Act, as amended. See 42 U.S.C. §§ 3610-3619. Basing its decision on its conclusion that the 1988 Amendments to the Fair Housing Act in their entirety were not retroactive, the district court held: 1) the Department of Housing and Urban Development ("HUD") investigation was not a pending action for purposes of filing the instant action when the 1988 Amendments to the Fair Housing Act became effective; 2) that to allow the government to proceed with the prosecution of this case would be to interpret the 1988 Amendments to apply to virtually any preexisting or pending action;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Case Law Ref. No. 2**

4 F.3d 805
4 F.3d 805
**(Cite as: 4 F.3d 805)**
Page 2

and, 3) that because the complaint was filed on behalf of an individual, the matter was not of "great national concern," and thus to apply the 1988 Amendments "retroactively" would result in "manifest injustice." *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) ("[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."). The district court concluded that the amendments to the Fair Housing Act should not, therefore, be retroactively applied, and accordingly, it ordered the case dismissed. The district court had jurisdiction pursuant to 28 U.S.C. § 1345 (1988) and 42 U.S.C. § 3612(*o*) (1988). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 (1988). Because we hold that the case was pending at the time the 1988 amendments became effective, and because the amendments at issue involve only procedural and remedial changes in the law, leaving appellees substantive rights unaltered, we reverse.

**I**

In September of 1987, appellant Janet Blair moved into the Presidio Apartments managed and partially owned by appellee Edward Sandquist. Blair was subsequently subjected to a number of unwanted sexual advances by Sandquist in which he grabbed and kissed her. The third and most egregious of these advances occurred in late December, 1987 when Sandquist grabbed Blair and pinned her arms behind her back. While squeezing her neck and forcing her face upwards with his left hand, Sandquist forcibly kissed her, cutting her lip and bruising her neck. Pursuant to a criminal complaint filed by Blair, on December 2, 1988, Sandquist was convicted for assault in city court.

On April 30, 1988, Blair filed a complaint with HUD alleging sex discrimination by appellees Presidio Investments and Sandquist. She alleged that because she had filed a complaint against him, Sandquist had retaliated against her by: 1) demanding entry into her apartment on January 23, 1988 and threatening her with eviction if she did not comply; 2) refusing on April 7, 1988 to activate her air conditioning unit while activating all other units in the complex; 3) turning off the pilot light to her hot water heater on April 9, 1988; and, 4) attempting to have Blair arrested on false charges that she had stolen the drapes from the apartment after she vacated it.

At the time of these incidents, the Fair Housing Act of 1968 was in effect. The Act provided that victims of housing discrimination could file an administrative complaint with HUD within 180 days after the alleged discriminatory housing practice had occurred. *See* Fair Housing Act of 1968, § 810, 82 Stat. 81, 85 (codified at 42 U.S.C. § 3610 (1982)). Accordingly, Blair's administrative complaint was timely filed under the 1968 Act, pursuant to which an array of enforcement mechanisms to address prohibited discriminatory practices was then available, **\*807** i.e., informal methods of conference, conciliation, and persuasion, 42 U.S.C.A. § 3610(a); a private right of action, 42 U.S.C.A. § 3610(d); and a "pattern or practice" lawsuit by the government, 42 U.S.C.A. § 3614.

While HUD was investigating Blair's complaint, Congress passed the Fair Housing Amendments Act of 1988 on September 13, 1988. Fair Housing Amendments Act of 1988, 102 Stat. 1619 (codified as amended at scattered sections of 42 U.S.C.). Under the 1988 Act, HUD received new enforcement authority. The 1988 Act provides that: (1) HUD prepare a final investigative report and determine whether reasonable cause exists to believe that a discriminatory housing practice has occurred, 42 U.S.C. §§ 3610(b)(5), 3610(g) (1988); (2) if HUD makes an affirmative reasonable cause determination, as it did in the instant case, it must issue a charge against the respondent on behalf of the aggrieved person; and the charge initiates legal proceedings before an Administrative Law Judge 42 U.S.C. § 3610(g)(2)(A) (1988); or (3) in the alternative, after such a charge, either party may elect to have the claims adjudicated in a federal civil action, 42 U.S.C. § 3612(a) (1988), and if such election is made, HUD must authorize the Attorney General to commence and maintain a civil action on behalf of the aggrieved person, 42 U.S.C. § 3612(*o*) (1988). No longer was the government limited to filing a traditional "pattern or practice" lawsuit.

The Amendments went into effect on March 12, 1989. 42 U.S.C. § 3601 (1988). Significantly, at that time, HUD was still processing Blair's complaint. HUD had not determined whether to attempt to resolve the complaint nor had HUD attempted to conciliate the complaint. *See* 42 U.S.C. § 3610(a) (1982).

After the effective date of the 1988 Amendments, HUD processed the complaint under the Fair Housing Act, as amended in 1988. On April 7, 1989, HUD decided to attempt to resolve the complaint and scheduled a conciliation conference for April 27, 1989, a procedure provided for by the original act

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

4 F.3d 805                                                                    Page 3
4 F.3d 805
**(Cite as: 4 F.3d 805)**

and the 1988 Amendments. *See* 42 U.S.C. § 3610(a) (1982); 42 U.S.C. § 3610(b) (1988). Later, HUD prepared a Final Investigative Report pursuant to the 1988 Amendments. *See* 42 U.S.C. § 3610(b)(5) (1988). On December 13, 1989, after conciliation failed, HUD issued a Determination of Reasonable Cause and Charge of Discrimination against Presidio Investments and Sandquist pursuant to the 1988 Amendments. *See* 42 U.S.C. § 3610(g) (1988).

Sandquist elected to have the charges resolved in federal court pursuant to 42 U.S.C. § 3612(a) (1988). The Secretary of HUD then authorized the Attorney General to file this action on behalf of Blair on February 2, 1990, a new enforcement procedure only available under the 1988 Amendments. *See* 42 U.S.C. § 3612(o)(1) (1988).

In its complaint, the United States alleged that Sandquist discriminated against Blair on the basis of her sex in violation of 42 U.S.C. § 3604(b) (1982) by subjecting her to sexual harassment during her tenancy at the Presidio Apartments. Sandquist moved for dismissal arguing that: 1) Blair should originally have filed suit on her own behalf pursuant to the 1968 Act, 42 U.S.C. § 3610(d) (1982), while HUD continued its investigation; 2) the government did not have the right to file suit on Blair's behalf under the 1968 Act; and, 3) the 1988 Amendments did not apply to the action because Sandquist's alleged discriminatory actions had occurred prior to the effective date of the 1988 Amendments.

The district court treated Sandquist's motion to dismiss as a Motion for Summary Judgment and held in favor of Sandquist pursuant to Fed.R.Civ.P. 56. Blair sought, by pro se motion, to intervene in the action pursuant to 42 U.S.C. § 3612(o)(2) (1988) and sought appointment of counsel pursuant to 42 U.S.C. § 3613(b) (1988). The district court denied Blair's motion.

The United States filed a Notice of Appeal from the district court's adverse judgment. The United States then reversed its field and sought to withdraw its notice of appeal, prompting Blair again to file a motion to intervene with the district court. Two days later, Blair filed a motion with this court to intervene in the government's appeal.

**\*808** We granted the United States's motion to dismiss its appeal on March 10, 1992, but later, acting on Blair's motion, we reinstated the appeal. In so doing, we also granted Blair's motion to intervene

and to substitute her for the United States in the appeal. [FN1] We then stayed appellate proceedings pending the district court's entry of findings of fact and conclusions of law which it has now completed in a Memorandum Decision entered on July 31, 1992.

> FN1. Blair argues on appeal that the district court erred in denying her motion to intervene. The Fair Housing Amendments Act of 1988 permits an aggrieved party to intervene as of right in suits brought by the government on their behalf. Section 812(o)(2) of the Act, 42 U.S.C. § 3612(o)(2), provides, "Any aggrieved person with respect to the issues to be determined in a civil action under this subsection may intervene as of right in that civil action." Thus, Blair's motion to intervene falls squarely within the provision of Fed.R.Civ.P. 24(a)(1) providing for intervention as of right "when a statute of the United States confers an unconditional right to intervene" and the district court erred in denying Blair's motion. Thus, we granted Blair's motion to intervene on appeal and to substitute herself for the United States as appellant. On remand, Blair will be permitted to proceed in the district court proceedings in the place of the United States.

II

[1] We review a grant of summary judgment de novo. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 629 (9th Cir.1987). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339-40 (9th Cir.1989).

III

[2] The district court ruled that "the HUD investigation was not a pending action for purposes of filing the present action." As we now explain, we respectfully disagree with this conclusion.

Regrettably, the district court gave no factual or legal explanation for its ruling. This court has held, however, that for purposes of applying a newly enacted statute, an action is pending "[i]f the [administrative] charge was, on the date of enactment, on file with the Commission, and if final

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

action had not yet been taken by the Commission with respect to the charge...." *Inda v. United Air Lines, Inc.,* 565 F.2d 554, 561 (9th Cir.1977), *cert. denied,* 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978). *See also, Electrical Workers Local 790 v. Robbins & Meyers, Inc.,* 429 U.S. 229, 241-44, 97 S.Ct. 441, 449-451, 50 L.Ed.2d 427 (1976); *Osmundsen v. Todd Pacific Shipyard,* 755 F.2d 730, 731-32 (9th Cir.1985); *Bratton v. Bethlehem Steel Corp.,* 649 F.2d 658, 666 (9th Cir.1980).

At the time of the alleged discriminatory incidents, the Fair Housing Act of 1968 was in effect. Under the Act of 1968, victims of housing discrimination could file an administrative complaint with the Secretary within 180 days after the alleged discriminatory housing practice occurred pursuant to 42 U.S.C. § 3610 (1982). Accordingly, Blair filed a complaint on April 30, 1988 with HUD. The district court found that "[t]he third and most serious physical sexual advance occurred in December 1987...." *Id.* The district court found further that "[a]fter the December 1987 assault, Sandquist took retaliatory action in January, April and June of 1988 against Blair related to her tenancy." *Id.* Thus, we first hold, based on these factual findings, that Blair's complaint was timely filed with HUD because it was filed within 180 days of the alleged discriminatory practices.

After receiving Blair's complaint, HUD began its investigation as required by the provisions of the 1968 Act. HUD investigators interviewed witnesses and took written statements throughout the summer of 1988. Appellee Sandquist admits that HUD's investigation extended until November 8, 1988. The record reflects that the file remained active with HUD requesting files from the Washington D.C. office and telephoning Blair to obtain information through the end of February, 1989.

Congress passed the Fair Housing Amendments Act of 1988 on September 13, 1988. The Amendments went into effect on March 12, 1989, and HUD then began processing *809 the complaint pursuant to the Fair Housing Act, as amended in 1988. On April 7, 1989, HUD decided to attempt to resolve the complaint and scheduled a conciliation conference for April 27, 1989. Both the 1968 Act and the 1988 Act provide for this procedure. 42 U.S.C. § 3610(a) (1982) and 42 U.S.C. § 3610(b) (1988). HUD later prepared a final investigative report pursuant to § 810(b)(5) of the 1988 Act. *See* 42 U.S.C. § 3610(b)(5). On December 13, 1989, after conciliation failed, HUD issued a Determination of Reasonable Cause and Charge of Discrimination against Presidio Investments and Sandquist pursuant to § 810(g) of the 1988 Act. 42 U.S.C. § 3610(g). On January 6, 1990, Sandquist elected to have the charges resolved in a federal civil action pursuant to § 812(a) of the 1988 Act. *See* 42 U.S.C. § 3612(a). At no time did Sandquist claim he was not subject to the new law. In fact, his election to proceed as he did permitted him to proceed in a way that was not available to him under the 1968 Act. On January 16, 1990, the United States received authorization from the Secretary and filed this action on February 2, 1990 pursuant to § 812(*o*) of the 1988 Act. *See* 42 U.S.C. § 3612(*o*).

Blair's timely filed complaint was on file with HUD and HUD had not yet taken final action with respect to the charge when the 1988 Act went into effect on March 12, 1989. Thus, based on an analysis of the processing of the complaint, we hold that Blair's complaint was "pending" when the 1988 Act took effect. *See Inda,* 565 F.2d at 561. [FN2]

> FN2. Sandquist argues that HUD deliberately delayed the processing of Blair's complaint in anticipation of the 1988 Act. He maintains there must be some demonstrated good faith reason for delay keeping the case in "pending" status. Sandquist does not, however, cite any authority for this proposition. Moreover, the district court made no finding that HUD acted in bad faith in processing the claim. We therefore reject Sandquist's argument that HUD deliberately delayed the processing of Blair's complaint.

IV

[3] The district court granted summary judgment to Sandquist and Presidio Investments on the ground that the government could not proceed against them pursuant to 42 U.S.C. § 3612(*o*) (providing that the Attorney General will commence a civil action on behalf of the aggrieved person in a United States district court) because the 1988 Amendments could not be applied to the case. The 1988 Amendments at issue, however, merely provided the government with an additional method to enforce substantive rights and responsibilities already on the books since 1968. *See* 42 U.S.C. § 3612(*o*).

The procedures of which Blair seeks to take advantage are quite similar to the new procedures of which Sandquist took advantage in electing to have the charges resolved in federal court rather than by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

4 F.3d 805                                                                                                    Page 5
4 F.3d 805
**(Cite as: 4 F.3d 805)**

HUD. The procedures themselves did not affect the dimensions of the underlying charges. The conduct at issue if proved was unlawful and actionable both before and after the 1988 Amendments. Moreover, the Federal Regulations also consider the 1990 amendments to be only procedural. 54 Fed.Reg. at 3259 (1989) states, "Because new remedies and enforcement procedures do not affect vested rights, retroactive application is entirely appropriate." 24 C.F.R. Ch 1, Subch A., app. I, § 103.1 at 909. HUD's interpretation of the statute is entitled to deference. Gladstone v. Village of Bellwood, 441 U.S. 91, 107, 99 S.Ct. 1601, 1612, 60 L.Ed.2d 66 (1979).

Because HUD was actively investigating Sandquist at the time the 1988 Amendments became effective, appellees knew they faced potential consequences. At a minimum, appellees knew they faced a possible adverse determination and the possibility that the ensuing conciliation agreement might require the payment of damages. We are unable to find any manifest injustice in this set of facts or any substantive rights of which Sandquist is being deprived.

It is well established that " 'when a statute is addressed to remedies or procedures and does not otherwise alter substantive rights, it will be applied to pending cases.' " Nichols v. Stapleton, 877 F.2d 1401, 1403 (9th Cir.1989) (quoting Friel v. Cessna Aircraft Co., 751 F.2d 1037, 1039 (9th Cir.1985). See also Kruso v. International Telephone & Telegraph Corp., 872 F.2d 1416, 1425 (9th Cir.1989) (Section 1016(a) of the Judicial Improvements and Access to Justice Act of 1988 providing that naming of Doe defendants *810 no longer defeats diversity jurisdiction is procedural and therefore applies to cases pending on the effective date), cert. denied, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); Delta Computer Corp. v. Samsung Semiconductor & Telecommunications, 879 F.2d 662 (9th Cir.1989) (New section of the Federal Arbitration Act, 9 U.S.C. § 15, providing that an appeal could not be taken from an interlocutory order is procedural and therefore is applied retroactively).

We therefore hold that the 1988 Amendments at issue in the present case, providing the government with only additional enforcement remedies and procedures, apply to cases pending at the time of the effective date of the 1988 Amendments. [FN3] Thus, the government's case against Sandquist and Presidio Investments was properly before the district court, and the district court improperly granted summary

judgment to Sandquist and Presidio Investments. We therefore reverse and remand for proceedings consistent with this opinion.

> FN3. We are aware of the unsettled nature of the Supreme Court's views on retroactivity which loom menacingly over this case. See Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) (recognizing that Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016 (1974) and Bowen v. Georgetown University Hospital, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) are in "apparent tension"); FDIC v. New Hampshire Ins. Co., 953 F.2d 478, 486 (9th Cir.1991). We assume that at some future time clearer guidance will be available.

REVERSED.

4 F.3d 805

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



159 F.R.D. 400                                                                                                                    Page 1
159 F.R.D. 400, 31 Fed.R.Serv.3d 515, 8 A.D.D. 1085, 10 NDLR P 335
**(Cite as: 159 F.R.D. 400)**

C

**Motions, Pleadings and Filings**

United States District Court,
E.D. New York.
UNITED STATES of America, Plaintiff,
and
Josephine Palasciano and Joseph Palasciano,
Plaintiffs-Intervenors
v.
COUNTRY CLUB GARDEN OWNERS
ASSOCIATION, INC.; Board of Directors, Country
Club
Garden Owners Association, Inc.; Grace
Giampiccolo; and Total Community
Management, Inc., Defendants.
No. CV 92-5146 (ADS).

Jan. 16, 1995.

Disabled owner of cooperative unit sought to intervene in government's action against owners' association and management company for failure to accommodate unit owner's disability.   The District Court, Spatt, J., held that:  (1) owner was entitled to intervene, under the circumstances, despite delay in moving to intervene, and (2) intervenors' jury demand was timely, even though original complaint had been filed nearly 18 months earlier.

Ordered accordingly.

West Headnotes

**[1] Federal Civil Procedure** 331
170Ak331 Most Cited Cases
Handicapped owner of cooperative unit would be permitted to **intervene** in government's action against owners' association and management company under **Fair Housing Act** for refusing to accommodate unit owner's disability, even though motion was not filed until nearly two years after issue was joined;  granting motion would not significantly prejudice defendants, denying the motion would prejudice unit owner who would be precluded from effectively putting issue of liability and punitive damages before a jury, and government had admitted that its interests differed from those of unit owner. Civil Rights Act of 1968, §

812(*o* )(2), as amended, 42 U.S.C.A. § 3612(*o* )(2);  Fed.Rules Civ.Proc.Rule 24(a), 28 U.S.C.A.

**[2] Federal Civil Procedure** 320
170Ak320 Most Cited Cases
Timeliness of motion to intervene is a matter left to court's sound discretion to be determined from all of the circumstances;  among circumstances generally considered are how long applicant had notice before it moved to intervene, prejudice to existing parties resulting from delay, prejudice to applicant if motion is denied, and any unusual circumstances militating for or against finding of timeliness.  Fed.Rules Civ.Proc.Rule 24(a), 28 U.S.C.A.

**[3] Jury** 25(6)
230k25(6) Most Cited Cases
Mere inadvertence of counsel is insufficient to warrant granting untimely demand for jury trial;  rather, court can grant untimely demand only if new cause of action is pleaded which raises new facts or changes character of the suit or which raises new issue for decision that differs from ultimate issue in prior pleadings.  Fed.Rules Civ.Proc.Rules 38(b), 39, 28 U.S.C.A.

**[4] Jury** 25(6)
230k25(6) Most Cited Cases
Answer to intervenor complaint, rather than answer to original complaint, would be treated as "last pleading directed to the triable issues," for jury demand purposes, where statute authorizing intervention also allowed for jury trials;  by precluding right to jury trial on basis of untimely demand due to failure to intervene earlier, court would undermine statutory remedies. Civil Rights Act of 1964, § 801 et seq., as amended, 42 U.S.C.A. § 3601 et seq.;  Fed.Rules Civ.Proc.Rules 38(b), 39, 28 U.S.C.A.
***401** Janet Reno, U.S. Atty. Gen., Dept. of Justice, Civil Rights Div., Housing and Civ. Enforcement Section (Harvey L. Handley III, Isabelle M. Thabault, of counsel), Washington, DC, Gurian & Bikson (Craig Gurian, of counsel), New York City, for plaintiffs-intervenors.

Cohen & Warren, P.C. (Barry L. Warren, of counsel), Smithtown, NY, for defendants.

**MEMORANDUM OF DECISION AND ORDER**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

159 F.R.D. 400                                                    Page 2
159 F.R.D. 400, 31 Fed.R.Serv.3d 515, 8 A.D.D. 1085, 10 NDLR P 335
**(Cite as: 159 F.R.D. 400)**

SPATT, District Judge:

The United States has commenced this action under Title VIII of the Civil Rights Act of 1968 ("The **Fair Housing Act**" or "Act"), as amended, 42 U.S.C. § § 3601-3631, alleging that the defendants engaged in discriminatory housing practices on the basis of handicap against Josephine and Joseph Palasciano ("Palascianos"). The Palascianos move to **intervene** as of right in this case as plaintiffs, pursuant to 42 U.S.C. § 3612(*o* )(2) and Fed.R.Civ.P. 24(a), and have filed an **intervenor** complaint with a jury demand. The defendants oppose the motion to **intervene**, and move to strike the jury demand. This case has been on the Court's 24 hour non-jury reserve calendar since December, 1993.

## BACKGROUND AND COMPLAINT

According to the complaint filed by the United States, the Palascianos own a cooperative unit located at Country Club Garden, 242 West Farber Drive, Babylon, New York. The defendant Country Club Garden Owners Association, Inc. ("Country Club") owns and manages the cooperative, while the defendant Total Community Management Corp. ("Total") manages the day-to-day operations of the cooperative. The defendant Board of Directors, Country Club Garden Owners Association, Inc. ("Board") is elected by the co-op shareholders to run the affairs of Country Club. The defendant Grace Giampiccolo is the Board's president. The Palascianos are shareholders in the cooperative.

The United States alleges that Josephine Palasciano is a handicapped person within the meaning of the **Fair Housing Act**, because she suffers from osteoarthritis and other conditions which severely restrict her ability to walk without assistance. According to the complaint, in the summer of 1989 the Palascianos requested that the defendants designate for Mrs. Palasciano's use a handicapped parking space immediately behind their co-op unit. The Palascianos also requested that they be permitted to modify the terrace behind their co-op, at their expense, so that a gate and steps could be provided in order to allow Mrs. Palasciano immediate access to the parking space. The Palascianos allege in their **intervenor** complaint that they had built such a gate and steps several years earlier, but that the defendants removed the gate and steps in the course of constructing new terraces during the summer of 1989. According to the United States and the Palascianos, the defendants refused to grant the Palascianos' requests.

On November 29, 1989, Mrs. Palasciano filed a complaint with the Department of Housing and Urban Development ("HUD") under section 810(a) of the Fair Housing Act, 42 U.S.C. § 3610(a), alleging that the defendants' refusal to grant the Palascianos' requests constituted a discriminatory housing practice on the basis of handicap under section 804(f) of the Act, 42 U.S.C. § 3604(f). The Secretary of HUD ("Secretary"), among other things, conducted an investigation of the complaint, and on September 8, 1992 issued a Charge of Discrimination against the defendants pursuant to section 810(g) of the Act, 42 U.S.C. § 3610(g). The Secretary charged the defendants with violations of section 804 of the Act.

**\*402** As authorized by section 812(a) of the Act, 42 U.S.C. § 3612(a), the defendants elected to have the charges alleged in the Palascianos' complaint resolved in a federal civil action. Accordingly, the United States commenced the instant action pursuant to section 812(*o* ) and 814 of the Act. The complaint alleges that the defendants' refusal of the Palascianos' requests constitutes discrimination on the basis of handicap under sections 804(f)(3)(A) and (B) of the Act. These sections respectively provide that a discriminatory act on the basis of handicap includes (A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied by the handicapped person, if such modifications may be necessary to afford the handicapped person full enjoyment of the premises, and (B) a refusal to make reasonable accommodations to, among other things, services, when such accommodations may be necessary to afford the handicapped person equal opportunity to use and enjoy the dwelling.

The government's complaint seeks declaratory and injunctive relief, compensatory damages, and punitive damages as a result of the defendants' alleged willful and intentional conduct. The government did not demand a jury trial.

## PRESENT MOTIONS

The Palascianos' move to intervene as of right in this action pursuant to section 812(*o* )(2) of the Act and Fed.R.Civ.P. 24(a). Section 812(*o* )(2) provides that any aggrieved person with respect to the issues to be determined in a civil action brought by the government under section 812(*o* ) "may intervene as of right in that civil action." Rule 24(a)(1) provides that upon timely motion, anyone shall be permitted to intervene as of right when a statute confers an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

159 F.R.D. 400                                                                                                          Page 3
159 F.R.D. 400, 31 Fed.R.Serv.3d 515, 8 A.D.D. 1085, 10 NDLR P 335
**(Cite as: 159 F.R.D. 400)**

unconditional right to intervene.   A previous motion
to intervene was made by the Palascianos' former
counsel in January, 1994, but was rejected because it
failed to set a return date at least fifteen days from the
day the motion was filed and served as required by
this Court's motion rules.

In connection with their present motion to **intervene**,
the Palascianos have filed a complaint naming only
Country Club as the defendant.   The complaint is
similar in all aspects to the one filed by the United
States.   It alleges the same facts and underlying
occurrences, is premised on the same sections of the
**Fair Housing Act**, and seeks the same relief.
Unlike the government's complaint however, the
Palascianos demand a jury trial.

The defendants oppose the motion, on the basis that
the Palascianos' intervention is untimely.   According
to the defendants, issue was joined in this case in
November 1992.   The defendants contend that the
Palascianos knew of their interest in this case from
the start, and that they had approximately two years
to intervene but chose not to do so.

The defendants also move to strike the Palascianos'
jury demand, on the ground that the Palascianos have
waived their right to a jury trial by making the
demand approximately two years after the close of
the pleadings.

## DISCUSSION

1. *Motion to Intervene Under* Rule 24(a).

Rule 24(a) provides as follows:
   **Intervention of Right.**   Upon timely application
   anyone shall be permitted to intervene in an action:
   (1) when a statute of the United States confers an
   unconditional right to intervene.
   Further, Rule 24(c) specifies the procedures to be
followed when a party seeks intervention:
   **Procedure.**   A person desiring to intervene shall
   serve a motion to intervene upon the parties as
   provided in Rule 5.   The motion shall state the
   grounds therefor and shall be accompanied by a
   pleading setting forth the claim or defense for
   which intervention is sought.   The same procedure
   shall be followed when a statute of the United
   States gives a right to intervene.

[1] In this case, section 812(*o*)(2) of the **Fair
Housing Act**, 42 U.S.C. § 3612(*o*)(2), confers an
unconditional right upon the Palascianos to **intervene**
in this action.   That section provides that "[a]ny

aggrieved person with respect to the issues to be
determined **\*403** in a civil action under this
subsection may **intervene** as of right in that civil
action."

The defendants do not dispute that the Palascianos
have a right under the statute to intervene in this case.
They challenge the Palascianos' intervention,
however, on the ground that it is untimely in
contravention to Rule 24(a).

[2] The timeliness of a motion to intervene is a
matter left to the Court's sound discretion, to be
determined from all of the circumstances.   *United
States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d
Cir.1994) (citing *NAACP v. New York*, 413 U.S. 345,
366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973)).
As the Second Circuit explained in *Pitney Bowes*:
   Timeliness defies precise definition, although it
   certainly is not confined to chronology.   Among
   the circumstances generally considered are:   (1)
   how long the applicant had notice before it made
   the motion to intervene;   (2) prejudice to existing
   parties resulting from any delay;   (3) prejudice to
   the applicant if the motion is denied;   and (4) any
   unusual circumstances militating for or against a
   finding of timeliness.
*Pitney Bowes*, 25 F.3d at 70 (citing *United States v.
New York*, 820 F.2d 554, 557 (2d Cir.1987)).

The defendants contend that the Palascianos' motion
to intervene is untimely, because (1) the Palascianos
had notice of their interest in this case since its
inception in October 1992, (2) denying their motion
will not prejudice them, because their interests as
intervenors are adequately protected by the United
States, which has filed a complaint based on the same
underlying facts, statutes and theories of recovery.

On the other hand, the United States and the
Palascianos contend that consideration of the
timeliness factors espoused by the Second Circuit
supports a determination that their motion is timely.
First, the government and the Palascianos argue that
the delay in bringing the present motion is not as long
as the defendants assert, because the Palascianos'
prior counsel attempted to make a motion to
intervene in January, 1994, some 13 months after
issue was joined in this case.   Moreover, both the
government and the Palascianos contend that the
delay in bringing about the present motion is due to
the ineffective representation of the Palascianos' prior
counsel, who has been replaced.   In this respect, the
Palascianos contend that upon being apprised of their
right to intervene, they retained their former counsel

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

159 F.R.D. 400
159 F.R.D. 400, 31 Fed.R.Serv.3d 515, 8 A.D.D. 1085, 10 NDLR P 335
(Cite as: 159 F.R.D. 400)

Page 4

in July 1993, approximately eight months after this action was commenced, for the purposes of intervening in this action. However, that attorney apparently delayed in filing the motion to intervene.

Second, the government and the Palascianos contend that granting the motion will not in any way prejudice the defendants, but that denying their motion will prejudice the Palascianos. According to the Palascianos, they will be prejudiced by being denied their right to present their case, injuries and damages to a jury. In support of this contention, the Palascianos contend that the government and they have divergent interests, and site to the affidavit of the government's attorney, Mr. Handley, in support of this contention. The affidavit of Mr. Handley states that the government did not demand a jury trial in this case because it is interested in obtaining a favorable ruling on issues of first impression that are raised in the complaint, and that such a ruling is more likely to come from a district judge rather than a jury. The Palascianos, on the other hand, claim that presentation of their case to a jury is important to them, especially in terms of obtaining a recovery based on punitive damages.

Third, the government and the Palascianos contend that there are unusual circumstances militating in favor of a finding of timeliness. Those circumstances are identified as (1) the ineffective representation of the Palascianos' prior counsel, and (2) the unconditional right to **intervene** conferred by section 812(*o* )(2) of the Act, which unlike the two other sections in the **Fair Housing Act** allowing for **intervention** by aggrieved parties, does not provide for "timely" **intervention**. Compare section 812(*o* )(2) with section 813(e) of the Act (**intervention by the Attorney General** in private suits must be timely) and 814(e) (**intervention** by aggrieved persons in suits brought by the Attorney General alleging a *404 pattern or practice of discrimination must be timely). According to the government and the Palascianos, the difference in language between the unqualified right to **intervene** conferred by the statute, and Rule 24(a)'s limitation of **intervention** by requiring timeliness, should be resolved in favor of the language of the congressional statute.

The Court agrees with the government and the Palascianos that taking into consideration all of the circumstances of this case, the Palascianos' motion to intervene should be granted as timely.

First, granting the motion will not significantly, if at all, prejudice the defendants. Indeed, nowhere in their opposition to the Palascianos' motion do the defendants contend that they will be prejudiced by granting the motion. To the extent any additional discovery may be warranted, it can be achieved in a short period of time.

Second, in the Court's view denying the motion will prejudice the Palascianos, because they would be precluded from effectively putting the issue of liability and punitive damages before a jury, as is their right under the United States Constitution and the statute. Given that the government has admitted its interests are not exactly the same as those of the Palascianos, the Palascianos have a significant interest in being present during the trial of this case.

Third, the Court believes that there are unusual circumstances in this case which favor a determination that the motion was timely. In the Court's view, the Palascianos did try to intervene earlier in this litigation, namely eight months after the commencement of the case, but because of their counsel's delay and his failure to properly bring the motion, they could not. Moreover, the divergent interests in the focus of litigation between the United States and the Palascianos makes this case unusual.

Accordingly, for the reasons stated above, the Court grants the Palascianos' motion to intervene. In arriving at this decision, the Court need not, and does not, reach the issue of resolving the apparent difference in the language of the statute, which grants an unqualified right to intervene to an aggrieved person, and the language of Rule 24(a), which limits intervention by requiring a timely motion.

*2. Motion to Strike the Jury Demand.*

Fed.R.Civ.P. Rule 38(b) provides in relevant part:
**Demand.** Any party may demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other parties a demand therefor in writing ... not later than 10 days after the service of the last pleading directed to such issue.
Pursuant to Rule 38(d), failure of a party to timely demand a jury trial constitutes a waiver of trial by jury.

[3] Fed.R.Civ.P. 39, however, provides that despite the failure to timely demand a jury trial, the Court may, in its discretion and upon motion, order a jury trial on any and all issues triable by a jury. In a case started in the federal court, in order to overcome a waiver of a jury trial demand under Rule 39 more than the "mere inadvertence" of counsel to demand

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

159 F.R.D. 400
159 F.R.D. 400, 31 Fed.R.Serv.3d 515, 8 A.D.D. 1085, 10 NDLR P 335
(Cite as: 159 F.R.D. 400)

such a trial must be shown. *Cascone v. Ortho Pharmaceutical Corp.,* 702 F.2d 389, 392 (2d Cir.1983); *Noonan v. Cunard Steamship Co.,* 375 F.2d 69, 70 (2d Cir.1967); *MacDraw, Inc. v. The CIT Group,* 1994 WL 17952, 1994 U.S.Dist. LEXIS 363, *14-17 (S.D.N.Y.1994) (citing cases). Granting an untimely jury demand based on the mere inadvertence of counsel is reversible error. *Cascone,* 702 F.2d at 392.

The Court can grant the untimely demand only if a new cause of action is pleaded which raises new facts or changes the character of the suit, *see, e.g., Lanza v. Drexel & Co.,* 479 F.2d 1277, 1310 (2d Cir.1973), or which raises a new ultimate issue for decision that is different from the ultimate issue in the prior pleadings, *see, e.g., Rosen v. Dick,* 639 F.2d 82, 94 (2d Cir.1980).

[4] The defendants contend that Palascianos' jury demand is untimely, because it was made almost 1 and 1/2 years after the last pleading directed to the triable issues was filed in this case, which was the defendants' answer. Moreover, because the intervenor complaint is the same as the government's complaint and does not raise any new issues *405 of material fact or new ultimate issues that are to be decided, the defendants contend that granting the Palascianos' motion under Rule 39 is inappropriate.

The government and the Palascianos contend, on the other hand, that pursuant to Rule 24(c) the intervenor complaint itself is "the last pleading directed to" the triable issues, and therefore argue that the jury demand is timely and has not been waived.

In explaining what constitutes the "last pleading directed to" a triable issue, the Second Circuit has stated that, " 'the last pleading directed to' an issue is not the pleading that raises the issue, it is the pleading that contests the issue. Normally, that pleading is an answer, or with respect to a counterclaim, a reply." *McCarthy v. Bronson,* 906 F.2d 835, 840 (2d Cir.1990), *aff'd,* 500 U.S. 136, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991).

In this case, the intervenor complaint raises the exact same factual and legal issues as the plaintiff's original complaint, and does not raise any new material issues for ultimate determination at trial. At first glance, then, it would seem that the rule espoused in *Bronson* supports the defendants' position, because the last pleading contesting the issues raised by the original and intervenor complaints is the defendants' answer. This precise issue, namely, whether the intervenors'

complaint--which alleges the same underlying occurrences, legal issues and theories of recovery--is the "last pleading directed to" the triable issues, is novel and has never been addressed by any court.

It is the Court's view, however, that in this case the first- glance reasoning is faulty, and that the last pleading contesting the triable issues is not the defendants' answer, but the defendants' answer to the intervenor complaint. The reasons for the Court's conclusion are two-fold.

First, although the Court recognizes that a jury demand in a subsequent complaint is untimely unless new material issues are raised, *see Rosen v. Dick, supra,* that rule has been applied in situations where the parties in the litigation remain the same. In granting intervention, the parties to the litigation have changed. In this regard, the Palascianos have now, for the first time, been able to file a complaint, demand a jury trial or otherwise take part in this case. It seems incorrect to this Court to rule that the Palascianos are precluded from obtaining their constitutionally mandated jury trial, when they have been unable heretofore to appear as parties to this case and make such a demand. Indeed, such a result seems suspect, as any intervenor who has not filed a motion to intervene until after the answer to the complaint or reply to a counterclaim, but whose intervention is deemed timely under applicable law, would be precluded from ever receiving a jury trial. This result would be absurd and totally unfair.

Second, the **Fair Housing Act** was amended in 1988 to allow for jury trials. This right was given to the Palascianos by the statute, as was their right to **intervene**. By precluding their right to a jury trial on the basis of an untimely demand due to a failure to **intervene** earlier, the Court would be undermining the basic remedies offered by the amendments to the statute. This Court does not believe that such an outcome is legally sound or fair to the **intervenors**, nor is it a proper resolution of the statutes' requirements and Rule 38(b)'s requirements.

The Court notes that in its research it has come across only one case that has discussed the timeliness of a jury demand under Rule 38(b) within the context of an **intervenor** complaint. *See In re Fox Brothers, Inc.,* 142 B.R. 320, 322-24 (Bankr.E.D.Ark.1992). However, in that case the **intervenor** complaint raised several material issues for determination at trial that were not contained in the original complaint, and the court held the last pleadings directed to the triable issues for purposes of Rule 38(b) were the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

159 F.R.D. 400, 31 Fed.R.Serv.3d 515, 8 A.D.D. 1085, 10 NDLR P 335
**(Cite as: 159 F.R.D. 400)**

defendant's answers to the original complaint and to the **intervenor** complaint. *Id.* at 324. Although the decision can be broadly read as implying that where the original and **intervenor** complaints raise the same facts and material issues, the last pleading directed to the issues is the defendant's answer, this Court refuses to read *Fox Brothers* in such a manner given the right to a jury trial conferred by the Seventh Amendment to the United ***406** States Constitution and the **Fair Housing Act** amendments.

Accordingly, notwithstanding *Fox Brothers,* for the reasons stated above it is the Court's view that the last pleading directed to the issues raised for trial in this case for the purposes of Rule 38(b), is the defendants' answer to the intervenor complaint. Accordingly, the Palascianos' demand for a jury is deemed timely and not waived, and the defendants' motion to strike the jury demand is denied.

For the reasons stated above, it is hereby

**ORDERED,** that the plaintiffs-intervenors' motion to intervene in this case pursuant to 42 U.S.C. § 3612(*o* )(2) and Fed.R.Civ.P. 24(a) is granted; it is further

**ORDERED,** that the defendants' motion pursuant to Fed.R.Civ.P. 38 to strike the plaintiffs-intervenors' jury demand as untimely is denied; it is further

**ORDERED,** that this case is removed from the Court's 24 hour non-jury reserve calendar, and is placed on the Court's calendar of jury trials; it is further

**ORDERED,** that the parties are to contact the Court within twenty days from the date of this order with a schedule concerning the remaining discovery that is to be conducted in this case; and it is further

**ORDERED,** that the parties are to appear for a conference before the Court on Tuesday, February 21, 1995, at 9:00 a.m.

**SO ORDERED.**

159 F.R.D. 400, 31 Fed.R.Serv.3d 515, 8 A.D.D. 1085, 10 NDLR P 335

**Motions, Pleadings and Filings (Back to top)**

• 9:92cv05146 (Docket) (Oct. 30, 1992)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00546-EGS    Document 1-7    Filed 03/22/2006    Page 30 of 36



175 F.R.D. 265                                                                    Page 1
175 F.R.D. 265, 39 Fed.R.Serv.3d 971
(Cite as: 175 F.R.D. 265)

**H**

<u>Motions, Pleadings and Filings</u>

United States District Court,
E.D. Michigan,
Southern Division.
UNITED STATES of America, Plaintiff,
Quintarus Jenkins, Khesha Jenkins, and Mheria
Lashai Jenkins, Plaintiff-
Intervenors,
Mary Trainor, Kate Trainor, Mary Beth Jeffers,
Patricia Thompson, and James
Thompson, Proposed Plaintiff-Intervenors,
v.
MARSTEN APARTMENTS, INC., a Michigan
corporation, Labana Management Company, a
Michigan corporation, Santokh Singh Labana,
Lorraine Labana, Charles J.
Padgett (a.k.a. Jerry Padgett), and Lillian Padgett,
Defendants.
No. 95-CV-75178-DT.

June 16, 1997.

United States brought action for violations of **Fair Housing Act**. Motion to **intervene** was filed. The District Court, <u>Komives</u>, United States Magistrate Judge, held that proposed **intervenors** had unconditional right to **intervene** in action.

Motion to intervene granted.

West Headnotes

**[1] United States Magistrates** ⚬15.1
<u>394k15.1</u> <u>Most Cited Cases</u>
Motion to intervene is a nondispositive motion which may be heard and determined by magistrate judge. <u>28 U.S.C.A. § 636(b)(1)(A)</u>; <u>Fed.Rules Civ.Proc.Rule 24, 28 U.S.C.A.</u>

**[2] Federal Civil Procedure** ⚬312
<u>170Ak312</u> <u>Most Cited Cases</u>
Purpose of rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved. <u>Fed.Rules Civ.Proc.Rule 24, 28 U.S.C.A.</u>

**[3] Federal Civil Procedure** ⚬311

<u>170Ak311</u> <u>Most Cited Cases</u>
Rule governing intervention is to be construed liberally with all doubts resolved in favor of permitting intervention. <u>Fed.Rules Civ.Proc.Rule 24, 28 U.S.C.A.</u>

**[4] Federal Civil Procedure** ⚬320
<u>170Ak320</u> <u>Most Cited Cases</u>
Timeliness of motion to intervene should be evaluated in context of all relevant circumstances. <u>Fed.Rules Civ.Proc.Rule 24, 28 U.S.C.A.</u>

**[5] Federal Civil Procedure** ⚬320
<u>170Ak320</u> <u>Most Cited Cases</u>
Motion to **intervene** was timely in action brought by United States for violations of **Fair Housing Act**; suit was still in pretrial stage, Act was entitled to generous construction, proposed **intervenors** filed motion to **intervene** only two months after they learned of potential claims, and defendants were not unduly prejudiced by **intervention**. Civil Rights Act of 1968, § 814(a), as amended, <u>42 U.S.C.A. § 3614(a)</u>; <u>Fed.Rules Civ.Proc.Rule 24, 28 U.S.C.A.</u>

**[6] Statutes** ⚬227
<u>361k227</u> <u>Most Cited Cases</u>
In determining whether statutory provisions are mandatory or discretionary, court should look at language, legislative history, and purpose of statute.

**[7] Federal Civil Procedure** ⚬331
<u>170Ak331</u> <u>Most Cited Cases</u>
Aggrieved parties are entitled by right to **intervene** in action brought by Attorney General for violations of **Fair Housing Act**. Civil Rights Act of 1968, § 814(e), as amended, <u>42 U.S.C.A. § 3614(e)</u>; <u>Fed.Rules Civ.Proc.Rule 24, 28 U.S.C.A.</u>

**[8] Federal Civil Procedure** ⚬331
<u>170Ak331</u> <u>Most Cited Cases</u>
Permissive intervention was appropriate in action brought by United States for violations of Federal Housing Act, even if proposed intervenors did not have unconditional right to intervene; intervenors' claims were closely related to government's claims, and separate lawsuit filed by proposed intervenors would likely have been consolidated with government's action. Civil Rights Act of 1968, § 814(e), as amended, <u>42 U.S.C.A. § 3614(e)</u>; <u>Fed.Rules Civ.Proc.Rule 24, 28 U.S.C.A.</u>
**\*266** <u>Pamela Thompson</u>, Asst. U.S. Atty., Detroit,

Case Law Ref. No. 4

175 F.R.D. 265
175 F.R.D. 265, 39 Fed.R.Serv.3d 971
(Cite as: 175 F.R.D. 265)

MI, Timothy Moran, U.S. Dept. of Justice, Washington, DC, for plaintiff.

Victoria Roberts, Goodman, Eden, Miller & Bedrosian, PC, Detroit, MI, for plaintiff-intervenors.

Stephen Ryan, Raymond & Prokop, PC, Southfield, MI, for Marsten Apartments, Labana Management, Santokh Labana, Lorraine Labana.

James O'Leary, Denfield, Timmer, Jamo & O'Leary, Lansing, MI, for Charles & Lillian Padgett.

*OPINION AND ORDER GRANTING MOTION TO INTERVENE*

KOMIVES, United States Magistrate Judge.

## I. OPINION

### A. Background

#### 1. Procedural Background

[1] The United States of America brings this action pursuant to the **Fair Housing Act** of 1988, 42 U.S.C. § 3614(a). The United States alleges that defendants have engaged in a pattern or practice of discrimination on the basis of race, color, and familial status at the Marsten Apartments, located in Allen Park, Michigan. On May 1, 1997, Judge Cohn referred all pending and future non-dispositive motions to me for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). On May 21, 1997, the Court held a hearing on a number of pending motions, including this motion to **intervene**. At **\*267** that time, the Court granted the motion to **intervene**, for the reasons that follow. [FN1]

> FN1. A motion to intervene is a nondispositive motion which may be heard and determined by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A). *See Commack Self-Serv. Kosher Meats, Inc. v. Rubin,* 170 F.R.D. 93, 95 (E.D.N.Y.1996); *cf. Yorkshire v. United States Internal Revenue Serv.,* 26 F.3d 942, 944 n. 3 (9th Cir.1994); *Granito v. Sunn,* 594 F.Supp. 410, 413 (D.Hawai'i 1984).

### B. Analysis

[2][3] Under the Federal Rules of Civil Procedure, a non-party may intervene in an action either as of right in certain circumstances, and in other circumstances

with the Court's permission. In relevant part, Rule 24 provides:

(a) **Intervention of Right.** Upon timely application anyone *shall* be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene....

(b) **Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common....

Fed. R. Civ. P. 24. "The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved." *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 97 (2d Cir.1990); *accord Coalition of Ariz./N.M. Counties for Stable Econ. Growth v. Department of the Interior,* 100 F.3d 837, 844 (10th Cir.1996). "Rule 24 is to be construed liberally with all doubts resolved in favor of permitting intervention." *Jochims v. Isuzu Motors, Ltd.,* 148 F.R.D. 624, 626 (S.D.Iowa 1993), *modified on other grounds,* 151 F.R.D. 338 (S.D.Iowa 1993); *accord Arkansas Elec. Energy Consumers v. Middle South Energy, Inc.,* 772 F.2d 401, 404 (8th Cir.1985); *Warheit v. Osten,* 57 F.R.D. 629, 630 (E.D.Mich.1973) ("[I]t is well understood that the rule should be read to allow intervention in as many situations as possible."). As with all the Federal Rules of Civil Procedure, Rule 24 must "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

#### 1. Timeliness

[4] Regardless of whether the proposed intervenors seek intervention of right under Rule 24(a) or permissive intervention under Rule 24(b), the first issue the Court must resolve is whether their motion is timely. The Sixth Circuit has identified five factors relevant to determining whether an intervention is timely:

(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 265
175 F.R.D. 265, 39 Fed.R.Serv.3d 971
(Cite as: 175 F.R.D. 265)

Page 3

circumstances militating against or in favor of intervention.

*Grubbs v. Norris,* 870 F.2d 343, 345 (6th Cir.1989); accord *Cuyahoga Valley Ry. Co. v. Tracy,* 6 F.3d 389, 395-96 (6th Cir.1993); *Redland Ins. Co. v. Chillingsworth Venture Ltd.,* 171 F.R.D. 206, 207 (N.D.Ohio 1997). No one factor is dispositive; rather, "[t]imeliness should be evaluated in the context of all relevant circumstances." *Grubbs,* 870 F.2d at 346 (citing *Bradley v. Milliken,* 828 F.2d 1186, 1191 (6th Cir.1987)). *See generally, NAACP v. New York,* 413 U.S. 345, 365-66, 93 S.Ct. 2591, 2602-03, 37 L.Ed.2d 648 (1973).

[5] Here, these factors weigh in favor of finding the proposed **intervention** timely. First, the suit is still in the pretrial stage, and although some discovery has been taken the case is not significantly close to trial. *See, e.g., Reeves v. International Tel. & Tel. Corp.,* 616 F.2d 1342, 1349 (5th Cir.1980) (**intervention** timely "where the substantial litigation of the issues had not been commenced **\*268** when the motion to **intervene** was filed.") (internal quotation omitted); *Usery v. Brandel,* 87 F.R.D. 670, 675 (W.D.Mich.1980); *Alexander v. Hall,* 64 F.R.D. 152, 157 (D.S.C.1974) (timeliness of **intervention** does not depend on actual time since filing of case but rather "depends more upon the readiness of the case for trial."). Second, **intervention** is sought here to assert rights under the **Fair Housing Act,** a broad, remedial statute entitled to a generous construction. *See, e.g., Epicenter of Steubenville, Inc. v. City of Steubenville,* 924 F.Supp. 845, 849 (S.D.Ohio 1996).

Third, there was not a significant length of time between the period the proposed intervenors knew of their claim and the time they filed their motion to intervene. Defendants assert that the motion to intervene is untimely because "documents disclosing the names of the proposed intervenors were given by Defendants to the U.S. *before* this lawsuit was even filed, i.e., in August of 1995." Def.s' Br. in Opp'n to Proposed Intervenors' Mot. to Intervene as Pls. at 8. However, when the government as plaintiff learned of the possible claims of the proposed intervenors is not relevant to the timeliness determination. Rather, the relevant issue is when the proposed intervenors learned of their possible claims. Here, the proposed intervenors assert that they did not learn of their potential claims until the day before the Court's December 20, 1996 hearing on the previously filed motion to intervene. They filed their motion only two months later, on February 21, 1997. Accordingly, the proposed intervenors have not significantly delayed the bringing of their motion to

intervene.

Fourth, defendants are not unduly prejudiced by allowing intervention. Although some additional discovery may need to be taken, this is alone is insufficient to establish prejudice. *See, e.g., Meyer v. MacMillan Publ'g Co., Inc.,* 85 F.R.D. 149, 150 (S.D.N.Y.1980) (prejudice is not established merely because "additional discovery will be conducted, the number of motions increased, and the issues for trial enlarged."). Nor is the fact that the proposed intervenors assert state law claims not asserted by the government sufficient to establish prejudice where, as here, the additional claims asserted by the proposed intervenors arise from the same set of operative fact which must be proven at trial to support the claims already asserted by the government. *See, e.g., Wurz v. Bill Ewing's Serv. Ctr., Inc.,* 129 F.R.D. 175, 177 (D.Kan.1989). Finally, there are no exceptional circumstances weighing either in favor of or against intervention. Because the relevant factors weigh in favor of a finding of timeliness, the Court concludes that the motion of the proposed intervenors is timely under Rule 24. Accordingly, the Court will consider whether the proposed intervenors are entitled to intervene as of right under Rule 24(a)(1) or are entitled to permissive intervention under Rule 24(b).

### 2. *Intervention of Right*

[6] The proposed intervenors allege that they were discriminated against by defendants as part of the pattern and practice of discrimination alleged by the United States, and seek to intervene to pursue their individual claims for money damages. Under section 3614, "any person *may* intervene in a civil action commenced by the Attorney General under [section 3614] which involves an alleged discriminatory housing practice with respect to which such person is an aggrieved party[.]" 42 U.S.C. § 3614(e) (emphasis added). Defendants argue that the use of the word "may"--rather than "shall"--suggests that the statute does not confer an unconditional statutory right to intervene. [FN2] The Court disagrees. First, although "may" usually connotes the permissive and "shall" the mandatory, "there is not simple mechanical test for determining whether a provision should be given mandatory or directory effect." 3 NORMAN J. SINGER, SUTHERLAND ON STATUTES & STATUTORY CONSTRUCTION § 57.03, at 7 (5th ed.1992). Thus, in determining whether statutory provisions are mandatory **\*269** or discretionary a court should look at the language, legislative history, and purpose of the statute. *Id.; see also, United States v. Rodgers,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 265
175 F.R.D. 265, 39 Fed.R.Serv.3d 971
**(Cite as: 175 F.R.D. 265)**

461 U.S. 677, 706, 103 S.Ct. 2132, 2149, 76 L.Ed.2d 236 (1983).

> FN2. Neither party has cited, and the court has not been able to locate, any case addressing whether § 3614(e) provides an unconditional right to intervene, although at least one commentator has suggested that it does. *See* 6 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 24.02[4] [d], at 24-20 through 24-21 (3d ed.1997).

[7] Here, § 3614(e) does, in one sense, confer a discretionary right. However, the controlling issue for purposes of determining whether the proposed intervenors have an unconditional statutory right to intervene under Rule 24(a) is the identity of the person in whom that discretion is vested. The relevant portion of the statute provides that "any person [who is an aggrieved party] may intervene." 42 U.S.C. § 3614(e). The discretion conferred here--whether or not to intervene--is not conferred on this Court, but rather is vested in the aggrieved party. As a simple matter of grammar, the use of the word "may" in a statute indicates that the decision is committed to the discretion of the party authorized to take the action. *See Matzke v. Block*, 542 F.Supp. 1107, 1114 (D.Kan.1982). Thus, as one court has phrased it, "[t]he word 'may,' when used in a statute, usually gives discretion *to those charged with enforcement* of the statute." *United States v. Markgraf*, 736 F.2d 1179, 1182 (7th Cir.1984) (emphasis added); *see also, International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1005 (2d Cir.1993) ( "The verb 'may' generally denotes a grant of authority that is merely permissive.").

Here, it is the aggrieved parties that are "charged with enforcement," through **intervention** in a suit brought by the government, of their statutory rights under the **Fair Housing Act**. Put another way, while § 3614(e) provides a grant of authority that is merely permissive, it is a grant of authority to the aggrieved parties, and not to the Court. So long as a party chooses to exercise its discretion to **intervene** in a manner which is procedurally correct under Rule 24(a), the Court has no discretion to deny such **intervention**. Accordingly, although they are certainly free not to exercise such a right, the proposed **intervenors** have an unconditional right to **intervene** under 3614(e), and are thus entitled to **intervene** by right pursuant to Rule 24(a). This result is consistent with the remedial purpose of the **Fair Housing Act** and the liberal **intervention** policy

underlying Rule 24.

Furthermore, this interpretation is consistent with the interpretation given similar intervention language in other statutes. For example, in *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947), the Supreme Court considered whether section 17(11) of the Interstate Commerce Act provided a union the right to intervene in an action brought under the Act. As it existed at the time, the relevant statute provided: " 'Representative of employees of a carrier, duly designated as such, *may intervene* and be heard in any proceeding arising under this Act affecting such employees.' " *Id.* at 526, 67 S.Ct. at 1391 (quoting 49 U.S.C. § 17(11)) (emphasis added). Although the statute said that the interested parties "may" intervene, the Court held: "In our view, § 17(11) of the Interstate Commerce Act does give the Brotherhood *an absolute right* to intervene in the instant proceeding within the meaning of Rule 24(a)(1)." *Id.* (emphasis added). Courts interpreting other intervention provisions have reached the same result. *See, e.g., New South Media Corp. v. Federal Communications Comm'n*, 644 F.2d 37, 38 & n. 6 (D.C.Cir.1981) (per curiam) (Communications Act of 1934 section providing that "any interested person may intervene and participate" in a pending appeal, 47 U.S.C. § 402(e), "permits the [interested] party to intervene as a matter of right and participate in the appeal."); *Brown v. United States*, 570 F.Supp. 640, 642 (S.D.Ohio 1983) (Under Internal Revenue Code section 7424, 26 U.S.C. § 7424, which provides that in a civil suit "the United States may intervene in such action or suit to assert any lien arising under" the Internal Revenue Code, "[i]t is undisputed that the United States has the right to intervene[.]"); *Carter v. School Bd. of W. Feliciana Parish*, 569 F.Supp. 568, 569 (M.D.La.1983) (treating motion to intervene under § 902 of Title IX, 42 U.S.C. § 2000h-2, which provides that in an action alleging denial of equal protection "the Attorney General for or in the name of the United States may intervene," as a motion to intervene as of right under Rule 24(a)); *270Canterino v. Wilson*, 538 F.Supp. 62, 63-64 (D.Ky.1982) (same). [FN3]

> FN3. The proposed intervenors also assert that they have a right to intervene under Rule 24(a)(2) because they have an interest in the subject matter of the litigation. However, because the Court concludes that the intervenors have an unconditional statutory right to intervene under Rule 24(a)(1), and in the alternative that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

permissive intervention is appropriate, it is unnecessary for the Court to address this argument.

### 3. *Permissive Intervention*

[8] Furthermore, even if defendants are correct that § 3614(e) does not create an unconditional right to intervene, intervention is appropriate under Rule 24(b). Although the claims of the proposed intervenors are not identical to those asserted by the intervenors already in the case or by the government, they arise from, and are closely related to, those claims. Many, if not most, of the legal and factual issues relevant to the government's claims will also bear on the claims of the proposed intervenors. Thus, the concerns for judicial economy underlying Rule 24(b) would best be served by allowing intervention. As Judge Cohn indicated in granting a previous motion to intervene, if the proposed intervenors filed a separate lawsuit, it would likely be consolidated and tried with the current case. Further, the evidence supporting both the government's claims and those of the proposed intervenors is largely the same. Tr. of Hr'g on Mots. to Intervene and Compel, 12/20/96, at 6-8. Accordingly, even assuming that the proposed intervenors do not have an unconditional statutory right to intervene, the Court finds permissive intervention under Rule 24(b) appropriate.

### II. *ORDER*

In view of the foregoing, the Court finds that the motion of the proposed intervenors is timely and that the proposed intervenors are entitled to intervene of right pursuant to Fed. R. Civ. P. 24(a)(1) and 42 U.S.C. § 3614(e). In the alternative, the Court finds that the proposed intervenors, in the interests of judicial economy, should be permitted to intervene pursuant to Fed. R. Civ. P. 24(b). Accordingly, it is ORDERED that the motion of proposed intervenors Mary Trainor, Kate Trainor, Mary Beth Jeffers, Patricia Thompson, and James Thompson is hereby GRANTED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

IT IS SO ORDERED.

175 F.R.D. 265, 39 Fed.R.Serv.3d 971

**Motions, Pleadings and Filings** (Back to top)

- 2:95CV75178 (Docket) (Oct. 10, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

THE DISTRICT OF COLUMBIA,
A municipal corporation,
1350 Pennsylvania Avenue, NW, Suite 409
Washington, DC 20004,

      Plaintiff,

        v.                                  Civil No. 06-0000162

STEVEN LONEY and
CAROLINE CHARLES,
1434 Somerset Place, N.W.
Suite 204
Washington, D.C. 20011

      Defendants.

---

### ORDER

Having considered the Consent Motion to Intervene as Plaintiffs and the accompanying

Memorandum of Points and Authorities, it is this ___ day of _____, 2006 hereby

ORDERED that the Consent Motion to Intervene as Plaintiffs is GRANTED and the

Complaint in Intervention shall be accepted for filing by the Clerk's Office.


                                      _____

                                      Judge, D.C. Superior Court

*Copies to:*

Robert J. Spagnoletti, Attorney General
David M. Rubinstein, Deputy Attorney General, Public Safety Division
Brenda Walls, Chief, Civil Enforcement Section (D.C. Bar No. 370940)
Joel D. Armstrong, Assistant Attorney General (D.C. Bar No. 467113)
Walter Adams, Assistant Attorney General (D.C. Bar No. 459131)
441 4th Street, N.W., Suite 450
Washington, D.C. 20001
(202) 727-6211 (phone)
(202) 727-6546 (facsimile)

Alan Balaran
1717 Pennsylvania Ave., N.W.
Suite 1300
Washington, D.C. 20006
(202) 466-5010 (phone)
(202) 986-8477 (facsimile)

Craig A. Holman (D.C. Bar No. 447852)
Cecily E. Baskir (D.C. Bar No. 485923)
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006
(202) 955-3000 (phone)
(202) 955-5564 (facsimile)

Isabelle M. Thabault (D.C. Bar No. 318931)
Eliza Platts-Mills (D.C. Bar No. 466453)
WASHINGTON LAWYERS' COMMITTEE FOR
    CIVIL RIGHTS & URBAN AFFAIRS
Washington, D.C. 20037-1128
11 Dupont Circle, N.W., Suite 400
(202) 319-1000 (phone)
(202) 319-1010 (facsimile)



# 3148974_v2